GLOBE NAIL Co. *v.* SUPERIOR NAIL Co. and others.[1]

(*Circuit Court, N. D. Illinois.* March 22, 1886.)

1. PATENTS FOR INVENTIONS—CONSTRUCTION OF CLAIMS.
    In view of the state of the prior art as disclosed by older patents, and of the patentee's acceptance of restricted claims after the rejection of broad ones, patent No. 92,355, of July 16, 1869, to T. H. Fuller, assignee of A. M. Polsey, for an improved manufacture of horse-nails, must be strictly construed, and confined to the making of nails by punching or cutting from hot-rolled ribbed bars of metal a headed blank, and the subsequent cold rolling, as an entire process.

2. SAME.
    This patent cannot be made to cover the process of the older art of hot rolling the blanks from rods, and finishing the nails by cold rolling.

3. SAME.
    This patent may possibly be sustained when limited to the special process of producing blanks from a ribbed strip of metal, and finishing them by cold rolling.

4. SAME—INFRINGEMENT.
    This patent as thus construed not infringed by defendant's method, which consisted in forging blanks from hot rods, slightly rolling them while cold to straighten and smooth them, and then shearing them to give the shank the required taper.

5. SAME—APPLICATION—WHAT CONSIDERED DATE OF, WHEN SUBSTITUTED SPECIFICATION IS FILED.
    Where, in an application for a patent, a substituted specification was filed, which was *so different* from the original as to cover a different invention, *held,* that the application must be considered as filed as of the date of such substituted specification.

---

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

6. SAME—FOREIGN PATENT.

> For the purpose of determining whether the term of a United States patent was limited by a foreign patent for the same invention. it was *held* that the date of an amendment which substituted, for the invention described in the original application, the invention covered by the patent as granted, must be taken as the date of filing the application.

Bill for injunction and accounting under letters patent No. 92,355, granted to T. H. Fuller, assignee of A. M. Polsey, July 16, 1869, for an "Improved Manufacture of Nails." The patent describes the manner of making horseshoe-nails by first rolling from the end of a bar while hot a strip so as to form a rib or raised portion at one end, and the remainder of which was made thinner, and from the sides or edges of this ribbed strip the blanks for the nails were to be cut or punched off, whereby the rib or the strip formed the head, and the thinner portion the shank of the nail, which was to be finished by cold rolling the shanks. Defendants made horse-nails by forging their blanks upon the end of a hot rod or strip of metal, the form and length being given by rolling and swaging. The nails were then passed through a machine whereby they were slightly compressed or cold rolled, and were finished by means of shearing dies. The original application for this patent was filed August 27, 1866, and the claim was for "a nail having a cut head and drawn point, as a new article of manufacture." This application was rejected in November, 1866, and laid dormant until June 23, 1869, when it was amended by striking out all but the signature of the inventor, and by inserting the present specification and claims, upon which the patent was granted July 16, 1869. The specification and claim originally filed differed materially from the specification and claims on which the patent was granted. On the communication of Polsey, the inventor, an English patent was obtained in December, 1866, for the same invention covered by the United States patent. Defendants contended that Polsey's amendment of June 23, 1869, presented a different invention from that specified in his application filed August 27, 1866, and that, therefore, in considering the question as to the effect of the English patent upon the United States patent, the application for the latter must be taken as filed June 23, 1869. The other defenses were that the patent was void for want of novelty, and that defendants did not infringe.

*Thomas H. Pease, George L. Roberts,* and *William M. Richardson,* for complainant.

*Offield, Towle & Phelps,* for defendants.

BLODGETT, J. This is a suit for an injunction and accounting by reason of the alleged infringement of letters patent No. 92,355, granted to T. H. Fuller, assignee of A. M. Polsey, on the sixteenth day of July, 1869, for "An Improved Manufacture of Nails."

In the specifications of the patent the inventor says:

"This invention consists in a metallic nail, as a new article of manufacture, in which the head is left in that condition of softness produced by hot-working a plate or strip of metal, and in that condition of form which results from the combined operation of hot working or rolling said plate and of punching or cutting a blank therefrom, while the shank is left in that condition of hardness, smoothness, and freedom from scale and rigidity which is produced by rolling the cut shank, substantially throughout, while cold, from the junction of the shank with the head to the point; such nails being superior for use with the shoes and hoofs of animals to any others ever before produced, in that the whole shank or body of the nail is hardened in a constantly increasing ratio from the head to the point; the rigidity of the nail, however, remaining nearly uniform throughout the shank, because the cross-section of the nail beyond the head is diminished in area about as the hardness and density of the metal are increased by cold rolling."

The mode of manufacture by which the nails covered by this patent are to be produced is to, first, roll from the end of a bar while hot a strip so as to form a rib or raised portion at one end, and the remainder of which is made much thinner, and from the sides or edges of this ribbed strip the blanks for the nails are to be cut or punched off, whereby the rib of the strip forms the head, and the thinner portion forms the shank, of the nail, and then to finish the nail by cold rolling the shank.

The claim of the patent is:

"A nail made by punching or cutting from hot-rolled ribbed bars of metal a headed blank, substantially as described, and by elongating, hardening, and compressing the shanks of such blank by cold rolling from the head to the point, thereby giving to all parts of the nail so produced the superior qualities specified."

The defenses are (1) that this patent had expired at the time this suit was commenced by reason of the expiration of an English patent granted December 18, 1866, to Robert Lake, on a communication from Polsey, the inventor of the patent in suit, whereby equity had no jurisdiction of the controversy; (2) that the patent is void for want of novelty; (3) that defendants do not infringe.

With the view I take of the construction which must be given this patent, I shall only consider the question of infringement. The defendants make horse-nails by forging their blanks upon the end of a hot rod or strip of metal about the size of the head of a horse-nail. The head of the nail, and the general form and length of the shank, are shaped from the hot rod by means of rollers and swages, the shank being drawn down substantially to its required length and thickness. It is then passed through a machine where one side of the shank is held against a smooth surface, while a roller presses the other side, whereby the metal is somewhat compressed while cold, and the required curvature given to the shank, and the end pressed so as to form a bevel. It is then carried to the shearing die, where the surplus iron upon the edges is cut away or sheared off, so as to give the shank the required taper. It was conceded upon the trial that the defendant's method of producing its blank is substantially like that

described by the Dodge patents of 1859, which have all expired; and it can only be contended that the defendants infringe the complainant's patent by the comparatively slight cold rolling they give the shanks of their nails in the finishing-machine. The claim of the patent is for a nail made by punching or cutting the headed blank from a hot-rolled ribbed bar, and *elongating*, hardening, and compressing the shank by cold rolling from head to point. The Fowler patent of June 5, 1866, issued a month before Polsey filed any application for the patent now in question, showed a process of forming blanks for horseshoe-nails by hot rolling from rods, and finishing and pointing them by cold rolling. The Whipple patent of 1864 also shows the production of horseshoe-nails by pressure from swages and dies when hot, and finishing the shank by cold rolling. The Dodge machine used by the defendants provides for the production of blanks for horseshoe-nails by rollers and swages from hot rods, which were afterwards finished by hammering or rolling while cold. The proof shows that in his first application for this patent Polsey claimed broadly a nail with a cut head and a rolled shank. This application was rejected, and after more than two years' delay he was allowed to file a new specification, and take the patent with its present claim.

With this condition of the art shown by the proof at the time of the Polsey invention, and his own act accepting a much narrower claim than that first applied for, I can have no doubt that the claim of this patent must be strictly construed, and confined to the making of nails by punching or cutting from hot-rolled ribbed bars of metal a headed blank, and the subsequent cold rolling, as an entire process; and the claim cannot be extended so as to include the process of the older art of hot rolling the blanks from rods, and finishing by cold rolling. The process of nail making, as shown by the patent, consisted in slicing off, so to speak, from the side of a ribbed bar of metal the nail blanks, so that the blanks would contain the head fully shaped by hot rolling and cutting, and the shank partly drawn out by hot rolling, and finishing the shank by drawing it out or "*elongating*" it by cold rolling. As a special process for producing blanks by thus slicing or punching them from a ribbed strip of metal, the patent may possibly be sustained under the then condition of the art shown by the proof; but it certainly cannot be construed to cover the older method of rolling blanks from hot rods, and subsequently finishing them by cold rolling or cold hammering, as shown in the Whipple, Fowler, Dodge, and several other machines exhibited in the proofs. The cold rolling which the defendants do upon the shanks of their nails in finishing them is very slight, and only intended to straighten and smooth them, and does not, as the proof shows, elongate them, and is not intended to do so. I am therefore clearly of opinion that, with the strict construction which must be given to this patent, the defendants do not infringe.

In the case of *Globe Nail Co.* v. *United States Horse-nail Co.*,

19 Fed. Rep. 819, heard before the learned judge of the district of Massachusetts, the record of which has been put into this case, the validity of this patent is sustained; but the defendants in that case cut their blanks from a ribbed strip of metal substantially as called for by the patent, and therefore the infringement was clearly established, and that case has no special bearing upon the questions involved in this.

The proof shows that the original application was made by Polsey in July, 1866, with a broad claim for a "nail having a cut head and drawn point, as a new article of manufacture," and not limiting the process of manufacture to cold rolling the shank of the nail, but allowing it to be hot rolled, swaged, or hammered, although the applicant expressed a preference for the cold rolling of the shank. This application was rejected in November, 1866, and laid dormant in the patent-office until June, 1869, when the specification was amended by striking out all but the signature, and inserting the specification of the patent as it now stands. The specifications of the present patent are so different from the original as to make what seems to me to be a new and different patent from that described in the original application, and therefore, for all the purposes of this patent, the application must be considered as filed June 23, 1869. In December, 1866, the English patent to Lake, on the communication of Polsey, was obtained, and, as the life of this English patent limits the life of the American patent to 17 years from the date of the English patent, I think the life of this patent is limited to 17 years from December, 1866; by which rule this patent had expired before this suit was commenced, and therefore there was no jurisdiction in equity, even if the defendants had infringed it during its life-time.

This bill is therefore dismissed for want of equity.