**HARDER et al. v. HAYWARD.**

Patent Appeal No. 4966.

Court of Customs and Patent Appeals.
May 24, 1945.

O. B. Buchanan of East Pittsburgh, Pa., for appellants.

A. D. Salinger, of Boston, Mass., and Harry E. Dunham, of Schenectady, N. Y. (G. H. Bainbridge, of Schenectady, N. Y., E. C. Britton, of Columbus, Ga., and Harry L. Kirkpatrick, of Boston, Mass., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter defined by the counts in issue (Nos. 1 to 6, inclusive) to appellee, Claude D. Hayward.

The interference is between appellants' patent, No. 2,240,699, issued May 6, 1941, on an application filed November 12, 1938, and appellee's application, serial No. 339,096, filed June 6, 1940.

In appellee's involved application it is stated that "This application is a continuation-in-part of my copending application, Ser. No. 179,016, filed December 9, 1937, for Protection of Electric Systems, the subject matter of said prior application being incorporated in this application together with additional subject matter."

It appears that appellee's earlier application, serial No. 179,016, filed December 9, 1937 (referred to in the quoted excerpt from appellee's involved application), containing 24 claims, was allowed by the Primary Examiner; that notice of allowance of that application was issued on May 14, 1940; and that approximately three weeks after the notice of allowance appellee filed his continuation-in-part application here involved. Subsequent to the filing of his continuation-in-part application, appellee's allowed application became forfeited by his failure to pay the final fee.

It will be observed from what has been said that appellee's allowed application and his continuation-in-part application were copending in the Patent Office, and that each of those applications was copending with appellants' application which matured into their involved patent.

On June 10, 1942, an interference was declared between appellants' patent and appellee's application (No. 339,096).

On September 5, 1942, appellee moved to shift the burden of proof, claiming that he was entitled to the filing date of his earlier application for conception and constructive reduction to practice of the invention defined by the counts in the interference.

Appellants opposed the motion to shift the burden of proof for the reason, among others, that as appellee's involved application was filed after the allowance of his earlier application, he was not entitled to the filing date of his earlier application for constructive reduction to practice.

Appellee's motion to shift the burden of proof was granted by the Primary Examiner, and appellee was made the senior party in the interference.

As the dates alleged in appellants' preliminary statement for conception and reduction to practice of the involved invention were subsequent to the filing date of appellee's earlier application, appellants were ordered to show cause why judgment on the record should not be rendered against them.

After reciting the facts hereinbefore stated, the Board of Interference Examiners stated that the sole issue before it was whether appellee was entitled to the filing date of his earlier application for constructive reduction to practice, in view of the fact that the renewal statute, section 4897 of the Revised Statutes, U.S.C. title 35, sec. 38, 35 U.S.C.A. § 38, had been repealed

August 9, 1939. In awarding priority of invention to appellee Hayward, the Board held that the decision in the case of In re Febrey, 135 F.2d 751, 30 C.C.P.A., Patents, 1099, where the facts were similar to the facts in the instant case, was controlling; that, therefore, appellee was entitled to the filing date (December 9, 1937) of his earlier application (No. 179,016) for constructive reduction to practice of the invention defined by the counts in issue; and that, as that date was prior to any date alleged by appellants, appellee was entitled to an award of priority of invention.

The sole issue before us is one of law; that is, whether appellee is entitled to the filing date of his allowed application for constructive reduction to practice.

If appellee is entitled to the filing date of his allowed application for constructive reduction of the invention to practice, the decision of the Board of Interference Examiners should be affirmed. If he is not, the decision should be reversed.

The issue before us being one of law, it is unnecessary that we quote any of the counts involved or discuss the invention defined thereby.

The facts in the Febrey case, supra, stated briefly, are as follows: An application of Febrey was allowed on July 20, 1940, with two claims. Febrey did not pay the final fee and the application became forfeited January 20, 1941. However, on January 9, 1941, before his application became forfeited, Febrey filed an application (which recited that it was a continuation of his prior application) in which he presented the two claims that had been allowed together with additional claims. The Primary Examiner declined to give Febrey's continuing application the benefit of the filing date of his allowed application, and rejected the claims on the ground that the invention defined thereby had been in public use for more than one year prior to the filing of the continuing application. In so holding, the Examiner stated, in substance, that Febrey's continuing application had been filed after the right of amendment of his original application had lapsed; that his continuing application was, in effect, a renewal of his original application; and that as the renewal statute (section 4897, supra), which authorized the filing of renewal applications after allowed applications had become forfeited, had been repealed, Febrey's application there involved

could not be regarded as a continuation of his allowed application. On appeal, the Board of Appeals affirmed the decision of the Primary Examiner.

In our decision in the Febrey case, supra, we stated that, at the time of the filing of his continuing application, Febrey's allowed application was pending in the Patent Office, and that had the renewal statute (section 4897, supra) not been repealed, the provisions thereof would not have been applicable to the facts in the case for the reason that when Febrey's continuing application was filed, his allowed application had not been forfeited. We there reviewed the decisions in several cases relating to continuing applications, including the case of Godfrey v. Eames, 1 Wall. 317, 68 U.S. 317, 17 L.Ed. 684, and, with reference to that case, said [135 F.2d 754, 30 C.C.P.A., Patents, 1099]:

"Appellant relies upon the case of Godfrey v. Eames [1 Wall. 317], 68 U.S. 317, 17 L.Ed. 684, decided in 1863, wherein Godfrey filed an application for a patent for an invention, the claims for which were rejected by the commissioner. At the time such application was filed, there was no bar of public use of the invention. Later Godfrey filed a new application for the same invention, but if limited to the date of his new application the bar of public use would exist. A patent was issued upon his second application.

"The question there decided was that his second application should be held to be a continuation of his first application, and that he was entitled to the benefit of the date of his first application, and hence the patent was not invalid because of prior public use of the invention.

"The case last cited arose under the patent laws of 1836 and 1839, which did not contain limitations respecting prosecution of applications which were found in the present patent statutes, and a distinction between that case and the one at bar is that in the instant case, appellant's application had been allowed and under Rule 78, supra, he no longer had the right to amend his application, while in the cited case the right of amendment of the first application had not been terminated.

"It should be noted that neither Section 4897, supra, nor any similar statute was in existence at the time of the decision in the last cited case. This section was enacted in substantially the form hereinbefore quoted."

We further said, inter alia: "Section 4897, supra, had no application to allowed applications which had not become forfeited through failure to pay the final fee due upon the issue of a patent. As to all unforfeited applications the law as construed by the case of Godfrey v. Eames, supra, and other cases, and applied by the Patent Office for many years, remained unaffected by the enactment of said section. We are therefore unable to see how an application which under the law and practice of the Patent Office was proper prior to the enactment of Section 4897, supra, and was not embraced in its provisions, could be affected by the repeal of that section." and, in reversing the decision of the Board of Appeals, concluded our decision as follows: "As hereinbefore stated, we hold that the repeal of Section 4897, supra, is not relevant to the issue before us; that appellant, from September 28, 1938, the date of his first application, was continuously applying for a patent for the invention claimed, and that no public use of the invention was shown prior to the date of his first application."

Counsel for appellants here challenges the correctness of our decision in the Febrey case, supra. It is conceded by counsel that an applicant may file a continuing application or a continuation-in-part application at any time before the allowance of his original application. Counsel contend, however, that there is no authority, statutory or otherwise, for the filing of such applications, with the benefit of the filing date of an allowed application, subsequent to the allowance of the allowed application. The gist of the argument of counsel is stated in his brief as follows:

"The renewal-statute, section 4897, while it was in force, was the only statute which provided any 'due proceeding' whereby a patent could be issued on an allowed application, other than by the payment of the final fee within the time set forth in the allowance-statute, section 4885.

"Therefore, *after* a formal notice of allowance of an application, under section 4885, there was *no* lawful way for a patent to issue on that allowed application,—*except* by either the payment of the final fee *as* and *when* required by section 4885, or the filing of a renewal application or petition as provided by section 4897.

"This is so, because section 4885 says that 'the patent shall be withheld,' if the final fee is not paid within the time speci-

fied;—and there has never been any other statute authorizing the commissioner *ever* to *issue* a patent on such a 'withheld' application, except the renewal-statute, section 4897."

The renewal statute (section 4897, supra), repealed August 9, 1939, which, so far as the issues here are concerned, was originally enacted March 3, 1865, 13 Stat. 533, Ch. CXII, read: "Any person who has an interest in an *invention* or *discovery*, whether as inventor, discoverer, or assignee, for which a patent was ordered to issue upon the payment of the final fee, *but who fails to make payment thereof within six months from the time at which it was passed and allowed, and notice thereof was sent to the applicant or his agent,* shall have a right to make an application for a patent for such invention or discovery the same as in the case of an original application. But such second application must be made within one year after the allowance of the original application. But no person shall be held responsible in damages for the manufacture or use of any article or thing for which a patent was ordered to issue under such renewed application prior to the issue of the patent." (Italics not quoted.)

Section 4885 of the Revised Statutes, U.S.C. title 35, sec. 41, 35 U.S.C.A. § 41, reads: "Every patent shall issue within a period of three months from the date of the payment of the final fee, which fee shall be paid not later than six months from the time at which the application was passed and allowed and notice thereof was sent to the applicant or his agent; and if the final fee is not paid within that period the patent shall be withheld: *Provided, however,* That the Commissioner of Patents *may in his discretion receive the final fee if paid within one year after the six months' period for payment has passed and the patent shall issue."* (Beginning with the word "may," italics ours.)

With the exception of the *proviso,* which was added August 9, 1939, 53 Stat. 1293, at the time of the repeal of section 4897, supra, section 4885, supra, so far as the issues here are concerned, has been in existence since March 3, 1863, 12 Stat. 796, sec. 3.

██ It is so obvious as to require no discussion that the renewal statute (section 4897, supra) related solely to forfeited applications, and, as held in the Febrey case, supra, "had no application to allowed applications which had *not* become forfeited through failure to pay the final fee." (Italics not quoted.) Accordingly, the repeal of that statute could not in any way affect the practice in the Patent Office, permitting applicants to file continuing applications or continuation-in-part applications after allowance, but before forfeiture, of their original applications.

It will be observed that the first part of section 4885, supra, which, as hereinbefore noted, has been in existence since 1870, provides that upon allowance of an application and notice thereof given, the applicant shall pay the final fee within six months, and that if the fee is not paid "the patent shall be withheld." That part of section 4885 clearly provides that a patent shall not issue on a forfeited application, that is, an application which has been allowed and has become forfeited by failure of the applicant to pay the final fee within the six months' period provided therein. There is nothing in those provisions, either express or implied, which prohibits the filing of a continuing application or a continuation-in-part application after allowance, but before forfeiture, of an original application.

At the time of the repeal of section 4897, supra, the Congress, realizing that the provisions of section 4885, then in force, prohibited the issuance of patents on *forfeited* applications, added the *proviso* to that section which authorizes the Commissioner of Patents, in his discretion, to issue a patent on a forfeited application, provided the final fee is paid within one year after forfeiture. It is clear, therefore, that the Congress was fully aware of the fact that the first part of section 4885, so far as it prohibited the issuance of patents, applied solely to forfeited applications.

Furthermore, it has been the practice in the Patent Office for more than 50 years (much of the life of the first part of section 4885), which practice has been approved by the courts, for applicants to file continuing applications or continuation-in-part applications after allowance, but before forfeiture, of their original applications. See Dederick v. Fox, 56 F. 714, decided by the Circuit Court, Western District, Pennsylvania, February 7, 1893, patent involved issued in 1888; Ex parte Lewis and Unger, 1903 C.D. 303; Gillette Safety Razor Co. v. Clark Blade & Razor Co., 187 F. 149, 155, decided by the Circuit Court, District New Jersey, May 8,

1911, affirmed by the Circuit Court of Appeals, Third Circuit, Clark Blade & Razor Co. v. Gillette Safety Razor Co., 194 F. 421; Motologue Advertising Corporation et al. v. Electime Corp., 5 U. S. P. Q. 370, 379 (decided by the District Court, Eastern District, New York, May 20, 1930). See also Ex parte Buehler, 1925 C.D. 24, where the Commissioner of Patents, in holding that an applicant might forfeit an application under section 4897, supra, prior to the expiration of the six months' period provided therein and file a *renewal* application, stated, inter alia: "* * * It may be noted that *the same result* would be accomplished if the applicant should file a new application for the same invention, and therefore abandon the second application. The Government fee would be the same in both cases; but the applicant would be put to the expense of preparing new papers and there would be a duplication of the Patent Office records. No necessity is seen for requiring such additional expense and duplication of records." (Italics not quoted.)

It is evident from the quoted excerpt from the decision in the Buehler case, supra, that the commissioner had in mind that an applicant had a right to file a continuing application or a continuation-in-part application after allowance, but before forfeiture, of his original application, and that such an application would be entitled to the filing date of his allowed application.

The decisions in the above cited cases were not based upon the provisions of the renewal statute (section 4897, supra), as it is obvious they could not have been, but rather upon the premise that an allowed application, not forfeited, is pending in the Patent Office, and that there is continuity between such application and a continuing application or a continuation-in-part application.

█ We are of opinion that neither the renewal statute (section 4897, supra) nor the first part of section 4885, supra, ever had any bearing whatsoever upon the right of an applicant to file a continuing application or a continuation-in-part application after allowance, but before forfeiture, of an original application.

Counsel for appellants argues that the case of Godfrey v. Eames, supra, does not hold that a continuing application or a continuation-in-part application may be filed subsequent to the allowance of an original application and, apparently, is of the view that we held that it did in the Febrey case, supra.

We did not so hold, as is apparent from our decision in the Febrey case, supra. However, as appears from the quoted excerpt from our decision in that case, we stated that section 4897, supra, *related solely to forfeited applications;* that the law as to *unforfeited applications,* as construed in the case of Godfrey v. Eames, supra, and other cases, and as applied by the Patent Office for many years, remained unaffected by the enactment of that section; and that as the law applicable to unforfeited applications was not affected by the *enactment* of that section, we were unable to understand how it could be affected by the *repeal* of that section.

It is argued that the repeal of the renewal statute was for the purpose of preventing long delay in the issuance of patents, and that the purpose of the Congress would be thwarted should it be held that a continuing or a continuation-in-part application might be filed as a matter of right after the allowance, but before forfeiture, of an original application.

It has not been questioned here that a continuing or a continuation-in-part application may be filed at any time prior to the allowance of an original application. Furthermore, it has been the practice in the Patent Office for applicants to file continuing or continuation-in-part applications prior to the allowance of original applications as a matter of right, and that practice has continued in the Patent Office since the repeal of the renewal statute (section 4897, supra). See Ex parte Silver, 50 USPQ 519; Ex parte Davidson, 58 U.S.P.Q. 343.

█ It is obvious, therefore, that if a continuing or a continuation-in-part application may be filed as a matter of right up to the time of the allowance of an original application, the right to file such an application, after allowance but before forfeiture of an original application, would not be extended for a period greater than six months.

But one other matter remains to be considered. It has been suggested that continuing applications and continuation-in-part applications must be considered as amendments of original applications; that the only authority for amending *allowed* applications which have not become forfeited is provided for in rules 78 and 165

of the Rules of Practice in the United States Patent Office, 35 U.S.C.A.Appendix; and that amendments to such applications, whether by continuing applications or continuation-in-part applications or otherwise, may be made only when approved by the Commissioner of Patents. Those rules, which were in existence for more than 50 years prior to the repeal of section 4897, supra, read:

"78. Amendments after the notice of allowance of an application will not be permitted as a matter of right, but may be made, if the specification has not been printed, on the recommendation of the primary examiner, approved by the Commissioner, without withdrawing the case from issue. (See rule 165.)"

"165. After notice of the allowance of an application is given, the case will not be withdrawn from issue except by approval of the Commissioner, and if withdrawn for further action on the part of the office a new notice of allowance will be given. When the final fee has been paid upon an application for letters patent, and the case has received its date and number, it will not be withdrawn from issue on account of any mistake or change of purpose of the applicant, his attorney or his agent, nor for the purpose of enabling the inventor to proceure a foreign patent, nor for any other reasons except mistake on the part of the office, or because of fraud, or illegality in the application, or for interference. (See rule 78.)"

■ Assuming for the purpose of this decision, without holding, that a continuing application or a continuation-in-part application is an amendment of an allowed application, it is not an amendment of the kind contemplated by rules 78 and 165, supra. The amendments contemplated by those rules are amendments which are entered in the files of allowed applications and become physical parts thereof; whereas continuing applications and continuation-in-part applications are separate· applications which do not form physical parts of allowed applications, although they are accorded the benefit of the filing dates of such allowed applications as to all common subject matter. That those rules were not intended to apply to continuing applications or continuation-in-part applications, is evidenced by the fact that, although they were in force for more than 50 years prior to the repeal of section 4897, supra, it was the practice in the Patent Office during that period for applicants to file continuing applications or continuation-in-part applications of allowed, but not forfeited, applications as a matter of right.

■ We adhere to the views expressed in our decision in the case of In re Febrey, supra.

For the reasons stated, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

JACKSON, Associate Judge (dissenting).

I am not able to agree with the decision of the majority.

In the interests of convenient reading I will discuss the facts and the law involved in the Febrey case. Febrey filed an application, Serial No. 373,828, January 8, 1941, for Stranded Plug-Type Signal Bond. His assignee was the American Steel & Wire Company. He alleged that application to be a continuation-in-part of an earlier application, Serial No. 232,182, filed September 28, 1938, which was passed to issue July 20, 1940, with two allowed claims. It will be noted that the later application was filed 12 days before the forfeiture date of the original application, January 21, 1941. The tribunals of the Patent Office held that if the continuation application had to rely upon its filing date it was barred by public use, and the issue there was whether or not Febrey should be allowed the filing date of his original application, September 28, 1938.

The drawings in both applications were identical except for reference characters. The Primary Examiner held that the only probable new matter in the continuation related to a description of the possible location of certain conductors, and that the new matter added did not materially modify the disclosure of the original, and was not entitled to an effective date prior to its own. The Board of Appeals was of opinion that all of the claims of the continuing application could have been made in the original and regarded the case as falling within the prohibition announced in In re application filed July 10, 1940, 1941 C.D. 12, 49 USPQ 566, and therefore that the application was barred by public use.

Upon appeal here, appellant's counsel stated in his brief that he did not urge that the second filed application was a continua-

tion-in-part, although he said he was willing to have it so determined if it were deemed necessary.

In our decision the second application was considered as an ordinary continuation and no discussion was deemed necessary concerning a possible difference in character between it and a continuation-in-part. In our decision in the Febrey case we held that by repealing the renewal statute, Section 4897 R.S., on August 9, 1939, Congress merely denied an applicant the right to file a renewal application after the previously filed application had become forfeited, and that the said repeal did not apply with respect to applications, even though they had been allowed, if they had not been forfeited.

We pointed out that the right to amend appellant's original application expired only because of the rules of the Patent Office, and, in my opinion, relied heavily upon the doctrine announced in the case of Godfrey v. Eames, 1863, 1 Wall. 317, 68 U.S. 317, 17 L.Ed. 684.

Upon further consideration I think that our decision in the Febrey case should be overruled.

Nowhere at any time has there appeared in the patent statutes any provision for continuing the life of an application, or for a resuscitation thereof, except in Section 4897 and the statutes relating to abandonment, which latter I do not discuss here. The first judicial approval of such practice was announced in the case of Godfrey v. Eames, supra. Under the statutes in effect then there was no limit on the time within which an applicant had to answer rulings of the Patent Office. Therefore it is not difficult to understand why an applicant under the facts of that case should have been given the benefit of the date of his earlier application. Godfrey was a patentee who brought suit for infringement against Eames. In his answer Eames alleged the invalidity of the Godfrey patent based on lack of continuity of prosecution. It appears that Godfrey filed his first application for a patent for boot-trees January 31, 1855. It was rejected for want of novelty. On April 24, 1857, Godfrey submitted a new application, simultaneously withdrawing the old one.

It will be noted that the original Godfrey application had been rejected. In the Febrey case the original application had been allowed. I think this difference between the facts in the Godfrey case and those in the Febrey case renders the former inapplicable as a precedent in the latter.

A careful review of all the decisions in which the Godfrey case has been cited reveals that in only one was the continuing application filed while the original application was allowed. Clark Blade & Razor Co. v. Gillette Safety Razor Co., 194 F. 421, affirming 187 F. 149. It should be remembered that neither Section 4897 nor anything comparable thereto was in existence when the Godfrey case arose, but that section was the law when the Clark Blade & Razor Co. case arose.

From the enactment of Section 4897 until its repeal an applicant was entitled to resuscitate his application. In none of the cases have I found that after the statutory time for renewal had expired was an applicant permitted to again file any kind of application whatsoever giving him the benefit of an earlier date. This rule was positively announced in Weston Electrical Instrument Co. v. Empire Electrical Instrument Co., 2 Cir., 136 F. 599, and in Barrett v. Hart, 1018 C.D. 62, 256 C.C. 224.

Assuming for the sake of discussion that the decision in the Godfrey case was based on a set of facts similar to those in the Febrey case, I would point out that subsequent to the decision in the former case Rule 78, substantially as it appears today, was made by the commissioner in 1879, under authority of law given him by Section 19 of the Act of July 8, 1870, 16 Stat. L. 200. That rule has the force and effect of law and therefore superseded the law of the Godfrey case insofar as it would have permitted Godfrey to file a continuation application after his case had been allowed.

All continuations broadly are to be considered amendments of a former application. All changes in either specification or claims do nothing more than enlarge or restrict the scope of the prior application, and as such amend it.

The right to file a continuation after the allowance of the original application must be based either on the right to amend the original or on the right to renew the original.

Rule 78 specifically states that amendments will not be permitted in the original application as a matter of right after the notice of allowance. Although the specific point has never been decided, that prohibition is broad enough to forbid the filing of a continuation application as a matter of

right after the notice of allowance in the original.

It has been decided, in the Weston Electrical Instrument case and in the Barrett case, both supra, that any application filed after the right to renew the original application had expired, could not be given the benefit of the filing date of the original. The latter case was in effect a holding that the right to file a continuation after the notice of allowance had issued in the original was dependent upon the right to renew the original.

That was the situation which confronted Congress at the time it was dealing with the repeal of Section 4897. On the one hand it had the provisions of Rule 78, which are broad enough to forbid the filing of a continuation after allowance of the original, and on the other hand it had a decision of the Second Circuit Court of Appeals, the Weston Electrical Instrument case, supra, and a decision of the Commissioner of Patents, the Barrett case, supra, that the right to file a renewal or a continuation, after the allowance of the original, expired after the right to renew the original expired. Relying upon those facts Congress had the right to assume that the repeal of the renewal statute would abolish the filing of all continuations after the notice of allowance had been mailed in the original.

When Congress repealed Section 4897 it clearly had in mind the great necessity of prompt and persistent prosecution of applications through to patent. It is interesting to notice that the repealer was one of a series of five bills designed to expedite the issuance of patents. They were introduced in the House of Representatives on the same day, reported from the Committee on Patents on two successive days, passed by the House of Representatives on the same day, reported by the Senate Committee on Patents the same day, passed by that body on the same day, and signed within four days of each other.

One of those acts reduced the time within which an applicant must file his application before the statutory bars operate to forbid the issuance of a patent on the invention from two years to one, 53 Stat.L. 1212, chap. 450, 35 U.S.C.A. §§ 31, 32, 69, 73. The Senate Committee Report (76th Congress, 1st Session, Report No. 876) states: "In 1839, when the period of 2 years was first adopted, it may have been a proper length of time for an inventor to make up his mind whether or not to file an application for patent. Under present conditions 2 years appears unduly long and operates as a handicap to industry. Reduction of the period would serve to bring the date of patenting closer to the time when the invention is made, and would expedite applications, not only in their filing but also in their progress through the Patent Office."

The second act abolished the appeal from the Examiner of Interferences to the Board of Appeals and substituted original and final determination of interferences in the Patent Office by a Board of Interference Examiners. The Senate Committee Report (76th Congress, 1st Session, Report No. 877) states: "The purpose of this bill is to shorten and simplify interference contests in the Patent Office by eliminating one of the two or more appeals now permitted."

The third act provided that an applicant wishing to copy the claims of an issued patent for the purpose of interference must do so within one year of the date the patent was granted. The Senate Committee Report (76th Congress, 1st Session, Report No. 880) states: "The purpose of this bill is to curtail the time within which an interference with an issued patent may be instituted."

The fourth act authorized the commissioner to require a response to an office action in less than the statutory period of six months under certain circumstances. The Senate Committee Report (76th Congress, 1st Session, Report No. 879) states:

"This is a bill to give the Commissioner of Patents authority to set times within which replies to communications from the Patent Office must be made by applicants for patents.

"Under the present law, an applicant for patent is allowed 6 months within which to reply to any action taken by the Patent Office, regardless of the nature of the action or of the condition of the application and the running of the period is beyond the control of the Patent Office. If the Patent Office writes a letter requiring, for example, a simple correction to the drawing or some other small correction, the applicant need not reply for 6 months. The response by the applicant may introduce other matters requiring another letter, and another 6 months for reply, and so on. The work of the Patent Office could be expedited considerably, to the benefit of the

public, if the Commissioner of Patents had the power to fix a period of less than 6 months in cases requiring a shorter time; for example, in cases which have been pending a long time, in cases which interfere with each other, in cases requiring only minor corrections, and the like."

Finally, the Act of August 9, 1939, 53 Stat.L. 1293, abolished the renewal statute but amended Section 4885 to authorize the commissioner in his discretion to accept the final fee if paid within one year after the application became forfeited. The Senate Committee Report on that act (76th Congress, 1st Session, Report No. 878) states:

"The original intent of this [renewal] procedure was to provide for issuing the patent when the time for payment of the final fee has been permitted to lapse through accident or unavoidable delay. Considered as a means for permitting the payment of a fee after it first falls due, the procedure is remarkably involved. It readily permits the deliberate postponement of the issuance of a patent and is resorted to mainly for this purpose, since additional matters may be deliberately introduced to cause further delays in reexaminations.

"The proposed change eliminates renewals, consequently simplifying the practice and *abolishing causes and opportunities for delays*. In place thereof the bill provides simply that the fee may be accepted late, and the patent issued, in the discretion of the Commissioner, upon the payment of a small additional fee. The original intent of the statute is preserved and the procedure simplified, yet at the same time *the opportunities for abuse are removed*.

"*Earlier issuance of the patent is assured by this bill which merely forecloses opportunities for deliberate delay.* * * *" [Italics mine.]

There can be no doubt therefore that Congress was entirely concerned with the expeditious patenting of inventions so that the 17 year period would begin to run without unreasonable delay. Under the well-known rule of statutory construction, that statutes in pari materia must be construed together, United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40, I think it is proper to consider all of those acts in seeking the intent of Congress, and when so considered I am led to the definite conclusion that Congress intended nothing less

in the repeal of Section 4897 than to render it impossible for applicants to prosecute their applications in the Patent Office indefinitely.

I am of the opinion that the decision of the Commissioner of Patents in Re application filed July 10, 1940, 1941 C.D. 12, 49 USPQ 566, decided May 5, 1941, gives a correct exposition of the application of the patent laws with respect to continuations subsequent to the repeal of the renewal statute.

It may be argued that the overruling of the Febrey case will do away with a long-continued practice of the Patent Office in permitting continuation applications to be filed subsequent to allowance of the original. I do not think this argument is of any substance.

Under the doctrine of the Febrey case an applicant is permitted to keep his application alive indefinitely without there being any time limitation such as was provided in Section 4897. This clearly nullifies the effect of that repeal, and in fact gives much greater opportunity to continue over an indefinite period the life of the application, thereby unconscionably delaying the monopoly period, and defeating the expressed purpose of Congress. As pointed out in the brief of the Solicitor in the Febrey case, the affirming of the Board of Appeals there might "require more careful preparation of applications and more careful prosecution thereof, but that is all."

It may be further noted that the repeal of Section 4897, R.S. does not preclude an applicant from filing a second application for the same invention if the invention has not been disclosed by public use or publication or foreign patenting more than one year prior to the second application.

The situation in which Febrey found himself was undoubtedly unfortunate, but was not occasioned by any statute or rule of the Patent Office. If it had been necessary there for the applicant to protect his invention, it seems to me that the reason for such protection would have been apparent in the exercise of proper attention and diligence during the prosecution of the case before allowance. It might well be that an applicant, by following the same course as was pursued in the Febrey case, could keep a "sleeper" alive indefinitely, and thus unduly delay the patent monopoly.

For the reasons above stated, I am of opinion that the decision in the Febrey case should be overruled.

Appellee contends that his second application is proper in that it is a continuation-in-part of his earlier application by reason of the commissioner's ruling prior to the Febrey decision, referring to In re application filed April 17, 1940, 1941 C.D. 14, 51 U.S.P.Q. 80, decided July 16, 1941. I cannot agree with the doctrine there announced. The formal allowance of an application by the Patent Office is a holding by it that the patent which is granted on it is valid. Consequently a continuation-in-part is as much of a device for delaying the issuance of a patent as is a continuation, and in my opinion both are subject to the same rule. Proper attention given to the drafting of specifications and claims in an application by reasonably diligent and skillful counsel would certainly reveal to him before allowance the scope of the necessary protection. That certainly must be considered as particularly true where organizations such as the assignees here, and also the assignee in the Febrey case, may be deemed to take to themselves every proper possible advantage of patentable improvements in their business. The patent of the appellants here is assigned to the Westinghouse Electric & Manufacturing Company, and the application of appellee to the General Electric Company.

I am of the opinion that the decision of the Board of Interference Examiners should be reversed, and priority of invention should be awarded to appellants.

O'CONNELL, Associate Judge (dissenting).

Appellants prosecute this appeal on the theory that the decision of this Court in Re Febrey, 135 F.2d 751, 30 C.C.P.A., Patents, 1099, was an erroneous decision which must be overruled together with the decision of the Board of Interference Examiners herein based on the citation of that case.

In sweeping aside the rules of the Patent Office as not applicable to the amendment of a pending application by the filing of a continuing application, the Court in the instant case perpetuates the doctrine of the Febrey case.

We cannot shut our eyes to the consequence of the decision in the Febrey case which was to nullify the substantial benefits to the public by reason of the repeal of Section 4897, supra, and its replacement by a simplified procedure, which was brought about on the recommendation made by the Commissioner of Patents when he was called upon by the Temporary National Economic Committee for suggestions to improve the patent laws. The plan also had the approval of the Department of Commerce, the Patent Office Advisory Committee to the Secretary of Commerce, and the indorsement of patent-law and other organizations. Report of the Senate Committee, 76th Congress, First Session, No. 878.

The question of law in this case relates to the right of the party Hayward to have his second application, which is involved in the interference, treated as a continuation of the proceeding instituted by the filing of his first application which was allowed, but not forfeited, before his second application was filed.

The Court in reaching its decision is called upon to determine the procedure under the Rules of Practice in the United States Patent Office relative to the filing of a continuing application after notice of allowance and to decide what change, if any, was effected in such procedure by the repeal of Section 4897 and the amendment of Section 4885 of the Revised Statutes.

Without recourse to a retrospective analysis of the Patent Laws, it may be observed, in general, that in making an application for a patent, an inventor is required to file a written description of his invention in such full, clear, concise, and exact terms as to enable not only a person skilled in the art to make use of the invention; but also to enable the personnel of the Patent Office and others to distinguish the invention from other inventions. Sec. 4888, R.S., U.S.C. title 35, sec. 33, 35 U.S.C.A. § 33.

After a person has filed such an application, he may either persist in its prosecution and obtain a patent; or he may abandon the application, actually or constructively, in which event no patent will issue. In persisting in its prosecution, an applicant may be required to amend his application either to correct a mistake in the application, or to avoid interference with other inventions. This amendment may be effected by a line and page correction of the papers themselves; or it may be effected by the process of filing a second, or substituted, application for the same invention. In effecting the amendment by either process, with diligence, the filing date of the original unabandoned application is continued and preserved.

The second, or substituted, application, used by an applicant in effecting the amendment of his pending application, was given no name in the text of the Patent Laws; but in the infancy of the procedure of the Patent Office it was christened, in effect, by a decision of the Supreme Court of the United States, and has been known and employed from that day to this as a "Continuing" application. See, Godfrey v. Eames, 1 Wall. 317, 68 U.S. 317, 17 L.Ed. 684; Ex parte Hall, 1920 C.D. 56; In re Roberts, 49 App.D.C. 250, 263 F. 646; In re Application Filed April 17, 1940, 51 U.S.P.Q. 80.

The right to amend and prosecute a pending application after notice of allowance is indirectly authorized under the collective provisions of Sections 4885, 4886 and 4888 of the Revised Statutes, U.S.C. title 35 secs. 41, 31, and 33, 35 U.S.C.A. §§ 41, 31, 33, and under the respective provisions of Rules 78 and 165 of the Rules of Practice in the United States Patent Office. Such rules are made by the Commissioner of Patents for the conduct of proceedings in the Patent Office under the authority conferred upon him by Section 4883, R.S., U.S.C. title 35, sec. 39, 35 U.S.C.A. § 39, and, unless it is disclosed that the involved rules are inconsistent with the statutes from which they are derived, they must be observed because they have the force and operation of law. Broadwell v. Long, 36 App.D.C. 418. For example, under Rule 68, supra, this Court has sustained the Commissioner of Patents in rejecting an amendment of an application for failure on the part of an applicant to show a good and sufficient reason why such amendment was not earlier presented. In re Wait, 73 F.2d 982, 22 C.C. P.A., Patents, 822.

Under Rule 78, supra, an amendment after notice of allowance may be made, if the specification has not been printed, by an applicant without withdrawing the application from issue to correct a mistake in the application which does not require a new examination of the application on its merits. See, Ex parte Goldsmith and Whiting, 1912 C.D. 350; Ex parte Stone, 1902 C.D. 434, 435. If the amendment require such an examination, however, it cannot be made unless the application is withdrawn from issue under the provisions of Rule 165, supra. See, Ex parte Bryant, 1902 C.D. 334, 336; Ex parte Meyer, 1907 C.D. 289, 290. In either event, an amendment after notice of allowance will not be permitted as a matter of right, but may be made only by an order of the Commissioner of Patents based upon a proper showing of good and sufficient reasons for the exercise of his supervisory authority.

For example, "It sometimes occurs that public use has intervened, or some other circumstances which render it practically impossible for an applicant to successfully prosecute a new application, and whenever this fact appears the Office with equal uniformity allows the application to be withdrawn from issue and amended. In the present case there was no such showing, and the Commissioner had nothing before him which would justify a departure from well-established practice." Ex parte Page, 1888 C.D. 63, 64.

In the case of Ex parte Rabsilber, 1911 C.D. 126, 127, the Commissioner of Patents held: "It is well settled that an application will not be withdrawn from issue for the purpose of further prosecuting the same in the absence of a showing that some error has been committed upon the part of the Office or that the failure to present a case in proper form was due to mistake upon the part of the applicant or his attorney and that due diligence has been used in discovering such mistake [and correcting it]."

An applicant for a patent shall pay the final fee not later than six months after notice of allowance; and if the final fee is not paid within that period, the patent shall be withheld and forfeited under the provisions of Section 4885, supra, and Rule 174 of the Rules of Practice in the United States Patent Office.

Section 4897 expressly authorized the filing of a renewal application, as a matter of right, to restore a forfeited application to the status of an original application; provided that the renewal application was filed within six months *after forfeiture* of the original application. The clear intent of Congress as expressed in the statute and in its legislative history was to provide a remedy for an inventor whose application was permitted to lapse and become forfeited through accident or unavoidable delay.

In other words, a continuing application was the proper procedure to be employed to amend a pending application after notice of allowance which required a new examination of the application on the merits; while a renewal application, or peti-

tion, was the proper procedure to be employed to renew a forfeited application. This distinctive use of the respective applications was employed and enforced under the Rules of Practice in the United States' Patent Office. See Ex parte Manny, 1888 C.D. 106; Ex parte Schultz, 1904 C. D. 366; Ex parte Nicholson, 1890 C.D. 112; Ex parte Meyer, supra.

In 1925, however, the Commissioner of Patents diverted the intent and operation of the law by holding that Section 4897 was a remedial statute which did not prohibit any person therein specified from waiving the limitation of time provided for in Section 4885, supra, for payment of the final fee; and that any such person *had a right* any time after the notice of allowance, *and prior to forfeiture,* to file a renewal application to amend a pending application. Ex parte Buehler, 1925 C.D. 24. To carry the decision into effect, the commissioner amended Rule 175 of the Rules of Practice in the United States Patent Office to provide that a renewal application could be filed "any time after the case is allowed and such renewal will be taken as a waiver of the right to pay the final fee." Order No. 2,911, 335 O.G. 5. However, in amending Rule 175, the Commissioner of Patents did not abolish or amend Rules 78 and 165, supra, which authorize the employment of a continuing application to amend a pending application after notice of allowance.

As a result of the decision in the Buehler case and the amendment of Rule 175, the use of the renewal application and the continuing application were co-existing remedies for the amendment of a pending application after notice of allowance. This procedure reversed the policy of the Patent Office which had been in existence for many years, and was one of the sources of the evil which led to the repeal of Section 4897. The root of the evil lay in the practice of filing a renewal application, *as a matter of right,* which, in effect, unjustly deferred and prolonged the time for the issuance of a patent.

How the Patent Office and public were imposed upon through the medium of the renewal application is described by the Commissioner of Patents in these terms:

"Amendments are delayed in many instances until the end of the period allowed by law, and when applications are passed for issue they frequently are forfeited and renewed with further amendment and their slow prosecution is resumed.

"Such a condition constitutes an abuse of the latitude and leniency of the law, a drag upon and a menace to the progress of the art.

"The only possible relief from conditions which have become intolerable is to force an application to patent or abandonment whenever an opportunity presents itself. *The petition* (for withdrawal from issue) *is denied."* Ex parte Dyson, 1916 C. D. 91, 93.

While the legislation was pending before Congress, the Commissioner of Patents made the following statement and recommendation regarding the correction of the "intolerable" conditions in his office: "The historic warrant for the renewal procedure was the purpose of affording relief to an applicant who was unable to pay the final fee when this became due. But it is now used frequently by corporations which are quite able to pay the final fee but which resort to the procedure as a device for continuing the prosecution of their cases. As a safeguard for an inventor who is financially unable to pay the final fee within the statutory period, I propose that the Commissioner of Patents, upon proper showing, have authority to receive payment of it at a later date." Investigation of Concentration of Economic Power and Hearings before the Temporary National Economic Committee, Part 3, page 862.

The purpose of Congress in repealing Section 4897 was outlined explicitly in the following brief report by Mr. Danaher, of the Committee on Patents of the United States Senate:

"The Committee on Patents, to whom was referred the bill (H.R. 6874) to repeal section 4897 of the Revised Statutes (U.S.C., title 35, sec. 38, 35 U.S.C.A. § 38), and amend sections 4885 and 4934 of the Revised Statutes (U.S.C., title 35, secs. 41 and 78, 35 U.S.C.A. §§ 41, 78), having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

"Under the present law, two fees are required in obtaining a patent; a fee when an application for patent is filed in the Patent Office, and a fee for issuing the patent when the application has been examined and found allowable (called the final fee). The purpose of the pending measure is to simplify considerably the

procedure in the payment of the second, or final, fee.

"When an application has been examined and found allowable a notice is sent to the applicant, and the final fee of $30 is due within 6 months. If the fee is not paid within this time, the patent is withheld. However, within a further 6 months, a so-called renewal application with a filing fee of $30 may be filed. (The original papers may be used, however.) This renewal, if additional matters have been introduced, must be reexamined and the prosecution before the Patent Office started all over again. A second notice of allowance is sent when the renewal application is found ready for issue, and the final fee of $30 is due within 6 months after this second notice.

"The original intent of this procedure was to provide for issuing the patent when the time for payment of the final fee has been permitted to lapse through accident or unavoidable delay. Considered as a means for permitting the payment of a fee after it first falls due, the procedure is remarkable involved. It readily permits the deliberate postponement of the issuance of a patent and is resorted to mainly for this purpose, since additional matters may be deliberately introduced to cause further delays in reexaminations.

"The proposed change eliminates renewals, consequently simplifying the practice and abolishing causes and opportunities for delays. In place thereof the bill provides simply that the fee may be accepted late, and the patent issued, in the discretion of the Commissioner, upon the payment of a small additional fee. The original intent of the statute is preserved and the procedure simplified, yet at the same time the opportunities for abuse are removed.

"Earlier issuance of the patent is assured by this bill which merely forecloses opportunities for deliberate delay. The simplification of the procedure is shown by the following tabulation: [Tabulation omitted, the procedure recommended having been enacted in the present statutes.]" Report of the Senate Committee, supra.

The law as to continuing applications, as hereinbefore stated, was established by the decision of the Supreme Court of the United States in Godfrey v. Eames, supra, decided in 1863, prior to the enactment of Section 4897, and, as pointed out in the decision of Detroit Iron & Steel Co. v. Carey, 6 Cir., 236 F. 924, 925, "The rule previous to the statute [Sec. 4897] was well settled that, where an application has not been abandoned, subsequent applications and amendments constitute merely a continuance of the original proceeding."

Congress, the Commissioner of Patents, and the leaders of the Patent Bar who participated in effecting a repeal of Section 4897 may be presumed to have known of the respective use and existence of both the continuing and renewal applications, and it may be gathered from the foregoing citations that in the repeal of Section 4897, Congress abolished the renewal application, but it did not abolish the continuing application. Furthermore, if it be assumed, as the decisions from time to time held, that a continuing application was involved in effecting the continuity of a renewal application, then it is obvious that in the repeal of Section 4897, Congress abolished, not the *use* of a continuing aplication, but its *abuse*.

For the reasons hereinbefore stated, it is my opinion that no change in the procedure of the Patent Office relative to the use of a continuing application was effected by the repeal of Section 4897 and the amendment of Section 4885 of the Revised Statutes. Such procedure is that after allowance, no amendment may be filed as a matter of right; nor will the Examiner have jurisdiction over the application unless by an order of the Commissioner of Patents based upon a showing of good and sufficient reasons for the exercise of his supervisory authority.

Recourse to the record on appeal in the Febrey case discloses that the original application was filed September 28, 1938, and allowed June 20, 1940. On January 9, 1941, Febrey filed a second application for the purpose of amending and continuing the prosecution of his original application. At that time, all but a few days of the six-months period allowed for payment of the final fee after notice of allowance had expired; and more than two years and three months had then expired from the date upon which the original application had been filed.

The decision of the Examiner and the concurring decision of the Board of Appeals held in effect that the claims of Febrey's second application could have been made in the first application and that the device described in the second application was substantially the same as the de-

vice described in the allowed claims of the original application. The Board further held that a continuing application, such as Febrey's second application, was abolished by the repeal of Section 4897, and that the claims of such application were barred by public use and sale. For the reasons stated, Febrey's second application was rejected by the Patent Office.

This Court in a unanimous decision reversed the action of the Board of Appeals and held that the repeal of Section 4897 did not affect the right of an applicant to amend and continue the prosecution of an original application by means of a continuing application. With this conclusion, I agree. This Court erroneously held in effect, however, that Febrey could file a continuing application as a matter of right.

In order that the two applications involved in a continuing application may constitute one continuous proceeding under the law, the second application must contain the same invention that is disclosed in the original application. See, Globe Nail Co. v. Superior Nail Co., 7 Cir., 27 F. 450. The mere fact that the two applications disclose the same invention, however, does not of itself confer the right to amend a pending application. Where the claims of the original application have been allowed and the claims of the second application are the same in effect as the claims that have been allowed and for which a patent is authorized to issue upon payment of the final fee, the right to file the second application will be denied for the reason that it does not constitute an amendment of the original application. Under these circumstances, the applicant is continuously applying for a patent which he has been previously allowed. In other words, the second application cannot be considered as a continuation of the original application because the claims of the second application have been previously allowed and there is nothing to be continued. See, In re Application Filed April 17, 1940, supra.

In the language of the decision in the case of In re Roberts, supra [49 App.D.C. 250, 263 F. 649], "It perhaps is unnecessary to add that a party who seeks to correct his own mistake must act with reasonable diligence, and also must assume the burden of establishing his good faith." In establishing the law as to continuing applications, the Supreme Court of the United States in Godfrey v. Eames, supra [1 Wall. 324, 68 U.S. 324, 17 L.Ed. 684], stated, "Both specifications are before us, and it is our duty to construe them."

The question of Febrey's diligence in discovering and correcting the mistake in his original application and the question of whether or not the subject matter contained in the claims of the second application constituted a bona fide amendment of the original application were not considered by this Court. It was the duty of the Court to do so.

For the reasons stated, it is my opinion that the decision in the Febrey case was erroneous and should be overruled.

In the case at bar, appellee, in filing his second application on June 6, 1940, which effected a resumption of the prosecution of his original application, filed December 9, 1937, two and one-half years before, offered no reason whatever why the claims embraced in his second application were not presented in his original application. As pointed out by appellants, so far as the record shows, Hayward's added improvement in his second application may have been in Hayward's possession since before he filed his first application, and was omitted for reasons best known to himself; or it may have been an improvement conceived as an afterthought, such as either he or anyone else could have made after the filing of his original application.

Moreover, so far as the issue of the present interference is concerned, the party Hayward has stated that the additional subject matter contained in the broader claims of his second application covers subject matter that is patentable over the subject matter disclosed in his original application.

Under Rule 165, supra, the time for amendment, *as a matter of right*, expires with the allowance of the application, and therefore Hayward's second application falls squarely within the law enunciated by the Commissioner of Patents: "No reasons whatever were given, when the first amendment (after allowance) was presented, why the same could not have been presented before the case was passed to allowance, and therefore there was at that time no reason for withdrawing the case from issue." Ex parte Orndoff, 1909 C.D. 48, 49. See also, Ex parte Stuart, 1904 C.D. 485, 486.

For the reasons assigned, the decision of the Board of Interference Examiners should be reversed.