41 C.C.P.A. (Patents)

### Application of CAMPBELL.
### Patent Appeal No. 6015.

United States Court of Customs
and Patent Appeals.
April 9, 1954.

Rehearing Denied May 24, 1954.

William M. Cushman, Washington, D. C. (Frederick J. Olsson and Raymond H. Synnestvedt, Philadelphia, Pa., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE and JACKSON, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in finally rejecting the single claim in appellant's application, Serial No. D–146,644, for a design patent on "Rotative Winged Aircraft." The claim was rejected for lack of invention over the prior art.

The appealed claim reads as follows:

"The ornamental design for rotative winged aircraft substantially as shown."

The references relied on are:

Lewis Des. 144,401 April 9, 1946; "American Helicopter," page 41 December 1945.

Appellant's application was filed May 28, 1948, and discloses a helicopter having tandem three-blade rotors, the blades of which overlap. The fuselage is generally tear-shaped in both side and top view, being slightly non-symmetrical in the side view, with a non-symmetrical blunt nose which bulges outwardly in the lower half. The aft portion of the fuselage, in side view, bends upwardly into a large rear pylon, shaped similar to a conventional vertical stabilizer, which supports the rear rotor above the forward rotor. In top view the fuselage has a blunt nose that converges to a relatively sharp tail, with a portion of the sides substantially parallel for approximately two-thirds of their length. Three landing wheels are provided, two forward wheels which extend downwardly and outwardly at an angle from the fuselage, and a tail wheel directly under the aft end of the fuselage. A small forward pylon is provided for the front rotor, with its top positioned well below the top of the rear pylon. Both pylons are egg-shaped in cross-section, with the smaller end positioned in a rearward direction. Windows are provided in the nose, above the protruding portion.

The Lewis patent discloses a design for a helicopter, provided with three two-blade rotors, two of said rotors positioned along the forward part of the fuselage on arms projecting to either side thereof, and one disposed in the aft portion, atop a pylon which is shaped like a conventional vertical stabilizer. The fuselage is generally tear-shaped, in both top and side view, with its nose portion less blunt than appellant's design, and the sides being bowed outward in the center, converging to a relatively sharp tail. Three landing wheels are provided, two at the forward portion of the fuselage, mounted on short, streamlined arms extending on either side, and a tail wheel directly under the aft portion of the fuselage. The forward rotor supports are generally tear-shaped, with the sharp portion positioned in a rearward direction.

The "American Helicopter" reference discloses a helicopter having tandem, three-blade rotors, the blades of which overlap. The views shown are a close-up, phantom, perspective view and a background view of a helicopter in flight. The fuselage appears to be generally tear-shaped in both top and side views, with the center portion bowed outwardly. The blunt nose appears symmetrical and is almost completely enclosed by windows. The rearward rotor is mount-

ed on a pylon raised above the pylon which mounts the forward rotor so that the blades of the rear rotor pass well above those of the forward rotor. The rear pylon is generally triangular shaped with the fuselage coming to a relatively sharp point to the rear thereof, to provide an exhaust for a jet engine. The landing wheels are retractable, two forward wheels extending downwardly and outwardly from the fuselage through opening therein provided with hinged covers, and a pair of tail wheels directly under the aft portion of the fuselage, which can be retracted within the fuselage and enclosed by a hinged cover. The pylons in this reference are of substantially the same thickness in cross section.

The examiner rejected appellant's design as being unpatentable over either of the above references. The Board of Appeals affirmed the examiner's rejection on the prior art, but apparently combined the rear pylon of the Lewis helicopter with the basic design disclosed by the "American Helicopter" reference. In its decision the Board stated, in part as follows:

"The aircraft shown in the 'American Helicopter' publication is quite similar in appearance to appellant's design. * * *. The forward rotor of the reference device is mounted on a support that extends somewhat higher above the top of the fuselage than appellant's turret-like front rotor support and the rear rotor is mounted on a generally triangular pylon, whereas appellant's rear rotor is mounted on a pylon that resembles a conventional vertical stabilizer. The Lewis patent, however, shows a three rotor aircraft in which the rear rotor is shown in Fig. 1 to be mounted at a higher level than the forward rotors on a vertical projection which resembles quite closely the appearance of appellant's rear rotor support."

Appellant contends that there are many differences between the references and his design and that these differences make the overall appearance of his design substantially distinguish over the references. It is also contended by appellant that the "American Helicopter" publication should be removed as a reference in view of his affidavit under Rule 131 of the Rule of Practice, 35 U.S.C.A. Appendix, swearing back of the publication date of that reference. The Patent Office concedes that appellant's affidavit is sufficient in substance to remove the reference, but holds that he cannot swear back of the reference since it was published more than one year prior to his filing date. 35 U.S.C.A. § 102(b).

However, appellant asserts that his design application is a division of his earlier filed application, Serial No. 687,115, for a mechanical patent on improvements in rotative winged aircraft. Both the Oath and Specification, as filed in the instant application, include a statement that such application is a division of the above mentioned application, Serial No. 687,115, filed July 30, 1946. It is also stipulated in the record of this case that Figures 1 and 2 of the earlier application show the same device as that shown by the drawings of the instant application. On this basis, appellant argues that he is entitled to the date of July 1946 for his design application, and since this is less than a year from the publication date of the "American Helicopter" reference his affidavit should be considered as removing that reference.

During the prosecution of this case the examiner consistently refused to acknowledge the design as a proper division of the earlier filed mechanical application and held that appellant was not entitled to the date of the earlier application for his design application. In support of this position the examiner cited the Commissioner's Decisions in the cases of Ex Parte Waterman, 1902 C.D. 235 and McArthur v. Gilbert, 1904 C.D. 245. The Waterman case held that a mechanical application could not be a division of an earlier filed design application, even though the design application had completely disclosed the mechanical invention and had included claims thereto. In that case the earlier application

had requested a patent for the term of 14 years and included the correct fee for such a design patent. The examiner refused the mechanical claims as improper subject matter for a design and the application was then limited to the design by amendment. When the applicant later filed a mechanical application he was refused the date of the earlier application his claim of a divisional application. In the McArthur case, McArthur filed a mechanical application and later a design application. When an interference was declared on the design application McArthur tried to claim that the design was a division of the earlier mechanical application, so as to make him the senior party in the interference. This claim was refused, and on appeal to the Commissioner of Patents the ruling was affirmed. The Commissioner held that the mechanical application was not a constructive reduction to practice of the design since the design could not have been claimed in the mechanical application.

The Board of Appeals affirmed the examiner in this view, despite appellant's arguments that the doctrine of the cited cases is erroneous. It was and is appellant's argument that when he filed his complete application in the Patent Office, disclosing both the mechanical invention and the alleged design invention, that he could have amended his application to claim only the design disclosed therein, instead of the mechanical invention.

■ The question of a design application being a division of a mechanical application has apparently never been before the courts. We have searched diligently for a case on the point but have been unable to discover a single court decision on the subject. However, we do not think that there is any great difficulty in arriving at a proper solution. When appellant filed his earlier application his Petition requested that Letters Patent be granted him for his invention and paid the usual $30 filing fee, plus an extra $1, presumably for an additional claim. His specification described the invention in such "full, clear, concise, and exact terms as to enable any person skilled in the art" to make and use the same, as required by R.S. § 4888 [1], then in effect. The oath filed with the application was also the usual oath required in mechanical applications. It appears obvious to us that this was the usual type of mechanical application that disclosed an alleged improvement in rotative winged aircraft, such improvement being distinctly claimed in the claims submitted with the application. Clearly, if there was any "new, original, and ornamental design" invention disclosed in such application it could not be claimed therein. Nor do we think that the application could have been amended to correspond to a design application. In order to so amend it would be necessary to amend the petition, to completely delete the specification originally filed, with the possible exception of the description of the first two figures, and file the usual form of design specification, cancel all of the mechanical claims and substitute the usual formal design claim, cancel the original oath and substitute the usual design oath, and of course cancel all of the drawings with the exception of Figures 1 and 2.

■■ We are aware that it is not unusual to do any one or more of the previous cancellations and substitutions at some time during the prosecution of an application before the Patent Office. However, to do all of the necessary cancellations and substitutions at the same time would be, in effect, the filing of a new application and not merely the amending of a previously filed application. And such new application would not, in our opinion be a continuation or division of the first, but an application for an alleged invention not previously disclosed in the earlier application. We do not believe that the filing in the Patent Office of drawings, which may show an alleged design invention, in the usual mechanical application can be considered

I. Now 35 U.S.C.A. § 111.

a constructive reduction to practice of the alleged design invention.

■ In the case of Dieterich v. Leaf, 89 F.2d 226, 24 C.C.P.A., Patents, 1138, we held that the mere paper drawing of an alleged inventive design for a three-dimensional article could not constitute actual reduction to practice of the design. Since the drawings, *per se*, could not constitute an actual reduction to practice, we think it follows that the filing of the drawings, without the necessary complete parts of a design application, could not constitute constructive reduction to practice of the alleged design invention. Therefore, we must agree with the tribunals of the Patent Office that the affidavit under Rule 131, while sufficient in substance, could not remove the "American Helicoptor" reference since the application was filed more than one year after the publication date of that reference, and the application was not entitled to the filing date of the earlier filed mechanical application.

■ Coming to the question of patentable distinction of appellant's design over the cited art, we do not think it necessary to discuss all of the arguments raised by appellant. They are mainly limited to pointing out the many minor differences between his design and that of either the "American Helicoptor" or the Lewis reference. However, it is well settled that when considering the patentability of a design it is the appearance as a whole which must be considered, and the mere fact that there are differences over the prior art structures is not sufficient to justify a holding that invention was required in the production of the design. In re Bonnell, 129 F.2d 520, 29 C.C.P.A., Patents, 1104. Of course, appellant argues that the differences relied on for patentability are not minor differences, but rather are marked and striking differences. With this view we are unable to agree. It is readily apparent that there are some differences, but these do not, in our opinion, vary so greatly from the cited prior art as to create the impression of a new and different design. When viewed in the light of the prior art, appellant's design appears to be a modification of the "American Helicopter" reference, and as such is not entitled to the patent monopoly. In re Abrams, 205 F.2d 202, 40 C.C.P.A., Patents, 1045; In re Johnson, 175 F.2d 791, 36 C.C.P.A., Patents, 1175.

■ Therefore, we are of the opinion that appellant's design, though different in some respects from the cited prior art, is well within the skill of a routine designer in the art and that the exercise of the inventive faculty was not required to produce the appealed design. See In re Jabour, 182 F.2d 213, 37 C.C.P.A., Patents, 1084.

We have carefully reviewed all of appellant's arguments and all of the cases cited by appellant in favor of those arguments. However, we find nothing in the cases that is contrary to what we have stated, nor any authority to support a different conclusion. For the reasons hereinbefore stated the decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, Judge, retired, sat for GARRETT, Chief Judge.

O'CONNELL, Judge (dissenting).

The Solicitor for the Patent Office properly concedes in his brief that if the application at bar is a true division of appellant's parent application, No. 687,-115, his affidavit under Rule 131 effectively removes the reference "American Helicopter" from the proceeding.

That reference was evidently relied upon by the tribunals of the Patent Office to bolster their rejection of appellant's claim solely on the ground that it was unpatentable over the design disclosed by the patent to Lewis.

It is my conviction after a careful analysis of the facts presented by the record and the long array of effective authorities presented by counsel for appellant that "American Helicopter" is not a valid reference in this case and that the design defined by the rejected claim at bar is patentably distinct over the patent to Lewis.

Appellant's drawings, in addition to showing certain mechanical features, fully disclosed the ornamental design of his helicopter. The board took the position that design and utility patents are authorized by different patent statutes, which extend patent protection for different periods of time, and if both types are disclosed in a single parent application, one cannot be divided out from the other and separately prosecuted in the Patent Office.

In that respect the tribunals of the Patent Office were in error since appellant under the statutes was entitled *as a matter of right* to amend his pending application by filing the divisional application at bar. In re Febrey, 135 F.2d 751, 30 C.C.P.A., Patents, 1099; Harder v. Hayward, 150 F.2d 256, 32 C.C.P.A., Patents, 1051; Ex parte Hall, 1920 C.D. 56. A divisional application is no more than an authorized amendment of a parent application, providing no new matter is thereby introduced into the disclosure of the claimed invention, Godfrey v. Eames, 1 Wall. 317, 68 U.S. 684, 17 L.Ed. 684; Dwight & Lloyd Sintering Co. v. Greenawalt, 2 Cir., 27 F.2d 823, 831; 35 U.S. C.A. § 132. Such is not the case here inasmuch as it has been stipulated by counsel for the respective parties:

"That Figures 1 and 2 of the drawings in applicant's application Serial No. 687,115 filed July 30, 1946, and still pending in the Patent Office show the same device as that shown in Figures 1 and 2 of the instant case."

The present statute relating to divisional applications, 35 U.S.C.A. § 121, which in general paraphrases similar provisions in the old law, so far as pertinent, now reads:

"§ 121. If two or more independent and distinct inventions are claimed in one application, the Commissioner may require the application to be restricted to one of the inventions. If the other invention is made the subject of a divisional application which complies with the requirements of section 120 of this title it shall be entitled to the benefit of the filing date of the original application. * * * "

The patent statutes past and present have further provided that all the regulations and provisions which apply to obtaining or protecting other inventions or discoveries shall likewise apply to patents for designs.[2]

The Solicitor for the Patent Office states his position and that of the Patent Office with respect to the controlling question of procedure here in issue:

"The common guiding factor, both in the decisions refusing to permit amendment of the application[3] * * * and those permitting amendment[4] * * * was the apparent intent of the applicant *at the time of filing*. Nothing in the law or in any of the decisions suggests any right in an applicant to change the essential character of an application once filed." (Italics quoted.)

There is no merit whatever in the position thus relied upon by the Patent Office. The identical point was advanced in Harder v. Hayward, 150 F.2d 256, 269, 32 C.C.P.A., Patents, 1051, 1073, to the following effect:

"In the case at bar, appellee, in filing his second [divisional] application * * * offered no reason whatever why the claims embraced in his second application were not presented in his original application. As pointed out by appellants, so far as the record shows, Hayward's added improvement in his second application may have been in Hayward's possession since before he filed his first application, and was omitted for reasons best known to himself; or it may have been an improvement conceived as an afterthought, such

---

2. R.S. §§ 4929, 4933, 35 U.S.C., 1946 ed., § 73, 35 U.S.C.A. § 171.

3. Ex parte Sellers, 1870 C.D. 58.

4. Ex parte Saunders, Jr., 1907 C.D. 363, 131 O.G. 1164.

as either he or anyone else could have made after the filing of his original application."

The court concluded however that under the patent statutes the applicant was entitled to file his divisional application as a matter of right, and the views described in the excerpt quoted above were rejected by the majority as an unwarranted heresy. That ruling is applicable to the arguments now advanced by the Solicitor for the Patent Office.

The Patent Office has here deprived appellant of a substantial property right by a process of reasoning which exploits the trivial and ignores that which is vital and important. The Supreme Court has recently reiterated the long established rule which governs here, namely, that " 'A party seeking a right under the patent statutes may avail himself of all their provisions, and the courts may not deny him the benefit of a single one. These are questions not of natural but of purely statutory right.' " Hartford-Empire Co. v. United States, 323 U.S. 386, 433, 65 S.Ct. 373, 396, 89 L.Ed. 322, citing Chapman v. Wintroath, 252 U.S. 126, at page 137, 40 S.Ct. 234, 64 L.Ed. 491.

Appellant's divisional application in issue is a continuing copending application as defined by the authorities hereinbefore cited. It is well settled law, as we emphatically pointed out in Teter v. Kearby, 36 C.C.P.A., Patents, 706, 169 F.2d 808, 813, that "Where one invention which is clearly disclosed in an application is not there claimed, but is subsequently claimed in a co-pending application by the same applicant, the first filing will be deemed a constructive reduction to practice and the later application will be given the filing date of the earlier one. Chapman v. Wintroath, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491." Furthermore, as we held in Teter, "It is immaterial that the subject matter in the last continuing case is claimed for the first time and that no previous claim was made of the subject matter in the earlier filed case. Benedict v. Menninger, 64 F.2d 1001, 20 C.C.P.A., Patents, 1138, and Harold D. Arnold v. Irving Lang-

muir, 36 F.2d 834, 17 C.C.P.A., Patents 756."

Appellant's procedure in the case at bar may not have been in strict compliance with the general routine of the Patent Office. No disruption thereof has been established, however, and no valid reason given as required by law, for the rejection of the appealed claim on what appears to be purely theoretical grounds. International Standard Electric Corp. v. Kingsland, 83 U.S.App.D.C. 355, 169 F.2d 890.

For the reasons stated, the decision of the Board of Appeals should be reversed.