John W. ENGLAND, Plaintiff-Appellee,

v.

DEERE & COMPANY, Defendant-Appellant.

No. 13029.

United States Court of Appeals
Seventh Circuit.

Nov. 28, 1960.

Rehearing Denied Jan. 18, 1961.

Arthur H. Boettcher, Chicago, Ill., Cameron A. Whitsett, Chicago, Ill., for appellant.

John M. Mason, Penrose L. Albright, Washington, D. C., for appellee.

Before DUFFY, SCHNACKENBERG ·and KNOCH, Circuit Judges.

DUFFY, Circuit Judge.

This is a suit for the alleged infringement of Reissue Patent No. 23,927, issued January 18, 1955. All of the claims of this patent, except Claims 3, 5 and 6, are at issue in this suit.[1] The District

---

1. Claim 2 of the patent in this suit is representative of the claims retained from plaintiff's original Patent No. 2,-594,140 and reads as follows:

"2. In a tying machine having a pair of spaced apart twine entraining disks, said disks having peripheral twine receiving notches, a twine holder comprising an arm pivotally mounted adjacent the periphery of said disks, a central finger on said arm, said central finger extending between said disks, a pair of fingers rigidly secured in spaced parallel relation to said central finger, said pair of fingers engaging the outer sides of said twine entraining disks, the face of each of said fingers having an arcuate twine engaging surface or edge portion."

Court found the claims in issue to be valid and infringed.

On October 15, 1951, plaintiff filed an application for a patent on the three-finger holder hereinafter described. The application was first denied by the examiner as not constituting invention over the Hornsby et al. British Patent No. 11,419. Several other references also were cited. Upon reconsideration of an amended application, the examiner, applying the same references, reversed himself. Patent No. 2,594,140 containing six claims was issued to plaintiff on April 22, 1952.

After he received his patent, plaintiff began commercial production of the three-finger holder, and the device met with immediate public acceptance. A large number of farmers brought the tying heads of their balers to Mr. England's farm for the installation of his twine holders. Within a space of a few years, the purchasers of twelve thousand of the holders substituted the patented device for the factory-installed equipment on various types of balers. This is a case of the better mousetrap, for the public has beaten a path to Mr. England's door to obtain his holder.

Prior to 1954, defendant, Deere & Co., did not market a twine-tie baler. It had been manufacturing grain and corn binders equipped with a single member twine holder. In 1951, it began experimenting with twine-tie balers. On June 9, 1953, Deere & Co. purchased three sets of plaintiff's holders to be used in its experimental work. Plaintiff personally delivered the holders to defendant. The twine-tie baler manufactured by defendant was placed on the market about June 1, 1954. These Deere machines were equipped with triple-finger twine holders. Plaintiff promptly notified defendant these holders were an infringement of his patent. Defendant replied that the claims of plaintiff's patent were anticipated by Cooley Patents No. 345,674 and No. 352,081.

On September 23, 1954, plaintiff filed an application for reissue of his patent. Six new claims, 7 to 12, inclusive, were added to the six claims of the original patent, all of which were retained. The application stated in the specification: "As seen in Figures 1, 3 and 4, all the longitudinal edges of said fingers are spaced from each other to provide completely open spaces between the fingers." The application specifically invited attention to Cooley Patents No. 345,674 and No. 352,081. On January 18, 1955, the Reissue Patent was issued embodying the six original claims and the six new claims.

The patented device is one element of the tying mechanism for twine-tie hay balers. There are several component parts to the tying mechanism such as interrelated entraining disks which are notched along their periphery to receive and engage a strand of twine; a holder to engage the twine within the entraining disks; a knotting device which fashions a knot in the twine, and a knife which cuts the twine to disengage the bale so that it may be deposited in the field. Usually a tractor furnishes the motive power.

The claimed invention relates to the twine holder. In knot-tying devices on balers and reapers, it had been customary

Claim 7 is representative of the six new claims added to the patent in suit and reads as follows:

"7. In a twine tying machine having a pair of spaced apart twine entraining rotary disks, said disks having peripheral twine receiving notches; the combination with said machine of a twine holder comprising an arm, arm pivot means pivotally mounting said arm on said machine adjacent the peripheries of said disks, a central plate-like finger extending between said disks, a pair of plate-like fingers, means rigidly securing one end of each of the fingers of said pair of fingers to said arm with one finger of said pair of fingers on each side of said central finger, the said fingers being completely separated from each other along all of their longitudinal edges and providing open spaces between said fingers whereby the said central finger may freely move between said disks during movements of said arm about said pivot means."

to retain the cord or twine with which the bales or bundles were tied, in a twine-entraining disk in which a spring-fashioned finger assists in holding the cord or twine in the entraining disk. The twine-holder described in the patent in suit consisted of three plate-like fingers. In earlier designs, this element was a single pivotally-mounted member which engaged the twine between dual-entraining disks and held it fast until the tying sequence was completed. A later refinement was exemplified by the Hornsby British patent. This showed a rigid-back holder, and operated in a fairly satisfactory manner when bundles of ordinary weight and size were handled. Later, International Harvester Company and New Holland Machine Division of the Sperry Corporation used a two-blade holder. However, when the tying mechanism was adapted for use on twine-tie balers and heavy bales resulted from green or damp hay, the old forms of holders were not satisfactory. Those baling hay with such devices almost uniformly had the experience that many bales which had not been properly tied due to the failure of the holding mechanism, were thrown out on the field. These bales had to be tied by hand. This procedure caused many exasperating delays.

Plaintiff England is a farmer by occupation. He was also engaged in custom baling. Like other balers, he encountered a high percentage of failure by the baling machine's tying-mechanism. He and others tried a number of methods to overcome the deficiencies. What seemed to be the most obvious method was to increase the spring tension of the twine holder against the disk. This was tried but did not remedy the condition.

Plaintiff tried advancing the timing of the twine disk. He reset the needles at both further and closer distances. He changed the notches in the disks. He tried loosening the twine tension. He adjusted the stripper arms of the twine to be cut sooner or later. He placed the cutting knife at different angles. He made adjustments to the bill hook. However, nothing he tried resulted in the baler turning out solidly packed bales without an undue percentage of untied bales leaving the machine. Others working in the art were also unsuccessful in finding a solution for the problem.

In August, 1950, plaintiff had had a particularly bad day of baling in which he encountered a large number of untied bales. That night he conceived the idea of constructing a plate-like three finger holder to replace the standard equipment on his baler which was equipped with a two-finger holder. He worked throughout the night welding a pair of three-finger holders and installed them on his baler. The result was sensational. In the next day's use, Mr. England encountered no untied bales after the first bale of the day. He continued to use his discovery experimentally on his own baler during the remainder of the 1950 baling season. The use of the new device continued to be successful.

Defendant argues the application for the original England Patent, No. 2,594,-140, was cursory, and its allowance ill-advised. In spite of the allowance of the claims by the Patent Office over the Hornsby disclosure, defendant insists the claimed invention was clearly anticipated by Hornsby. Defendant also claims the Reissue Patent was clearly invalid largely for the same reasons it urged the original patent to be invalid. Defendant finds fault with the application for the reissue patent. Defendant also argues the disclosure of the International Harvester two-blade holder was not before the examiner.

On the application for the original patent, the examiner cited references in addition to the Hornsby patent. These were Remy, No. 314,056; British Patent No. 410 to Wilkinson, and British Patent No. 497,474 to Lanz. The Hornsby and Wilkinson patents show a holder with a continuous back and three ribs which embrace a pair of disks. The Remy patent shows a two-blade holder with rivets along the top. The patent to Lanz disclosed a holder structurally similar to that of International Harvester in that it has two separated fingers. However, the

Lanz holder is shown as fitting between two disks rather than straddling a single disk.

At the trial, experts were called by both sides to testify as to the state of the art and the claimed superiority of plaintiff's three-finger holder. Demonstrations were held. Test machines were built by defendant and by plaintiff. Testimony was received as to the result of various tests. One test disclosed that England's three-finger holder had significantly greater holding power than International Harvester's two-finger holder. ■■■■ After consideration of the tests and demonstrations and of the conflicting testimony offered, the learned trial judge concluded that plaintiff's patent was valid and infringed. There was substantial evidence to support the trial court's findings and conclusions that plaintiff's invention was novel and constituted a significant advance in the art. There was ample evidence to sustain the statutory presumption in favor of the validity of plaintiff's patent. The presumption of validity applies to a Reissue Patent in the same manner as the original Patent. 35 U.S.C. § 252; Hazeltine Research, Inc. v. Avco Manufacturing Corporation, 7 Cir., 227 F.2d 137, 146. In any event, we cannot say the factual determinations of the trial court were clearly erroneous. Armour & Company v. Wilson & Co., 7 Cir., 274 F.2d 143.

Appropriate here is the statement of the Tenth Circuit in Harris v. National Machine Works, Inc., 171 F.2d 85, 88: "Finally, the presumption of validity arising from the granting of the patent by the Patent Office is strengthened by the additional presumption arising from the fact that the invention filled a want presented by a new situation, that it entered into immediate use, and that it met with substantial commercial success."

Likewise pertinent is the statement of this Court in Ray-O-Vac Co. v. Goodyear Tire & Rubber Company, 7 Cir., 136 F.2d 159, at page 160 (affirmed 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721) where we stated: "The court found the patent to be valid and infringed. There was considerable oral testimony given as to the wide acceptance of the product immediately following its appearance on the market. * * * Such evidence bore directly upon the plaintiff's contention that the invention was not obvious. * * The public appraisal of a new article's worth, evidenced by its prompt acceptance, outweighs, in some cases, a volume of opinion evidence given by professional experts."

Defendant lays much emphasis on its argument that the prior usage of two-finger holders by International Harvester and New Holland were not before the examiner. The trial court found to the contrary. The record shows that in Paper No. 3 of the Reissue Patent, the examiner was informed that plaintiff's holder was for use on the International Harvester 50 T baler and on the New Holland baler, among others, in place of the factory-installed holders.

In retrospect, it might have been better to have explained in detail the device used on these balers. It seems reasonably certain, however, that the claims of the patent both as originally presented and as the examiner finally allowed, were drawn to and read over this prior and current usage.

Furthermore, the claim for the invention of the patent in suit from the very first was directed to a holder having three fingers. The holders using two fingers had proved inadequate when heavy bales were encountered. The use of two-finger holders in twine-tie balers was common knowledge to those working in the art. In view of the new and unexpected result by adding a third finger to the holder in the manner devised by plaintiff, the use of the International Harvester and New Holland two-finger holders would not have been a bar to the issuance of a patent for plaintiff's invention.

■■■ It is not now for the plaintiff to prove that all prior art references are overcome. The burden was on the defendant to show lack of inventive distinction. This it has not done. When the fingers had a web or bar on one end,

there could not be the play between the fingers as in plaintiff's invention. This flexibility permits each finger individually to seek, of course within limits, a position within the disks compatible with the thickness and condition of the adjoining twine. The conclusion of the examiner that the England holder does represent a significant advance over the prior art has been confirmed by the subsequent events.

■■ Defendant insists that the Reissue Patent must be declared invalid because all the original claims are retained therein. However, this is not a case where the patentee admits he claimed more than he was entitled to in the original patent. It was plaintiff's objective to correct defects in the specification. The six new claims all refer in some way to the changed specification. The right which the patentee had to correct defects in the specification surely gives him the right to include new claims incorporating those corrections.

Defendant has presented other arguments which we have carefully considered but which we believe to be without merit.

Judgment affirmed.