**UNION ASBESTOS & RUBBER COMPANY, Plaintiff-Appellee,**

v.

**The PALTIER CORPORATION, Defendant-Appellant.**

No. 13268.

United States Court of Appeals Seventh Circuit.

Jan. 4, 1962.

Edward W. Osann, Jr., Ralph F. Crandell, Chicago, Ill. (Wolfe, Hubbard, Voit & Osann, Jarrett Ross Clark, Chicago, Ill., of counsel), for defendant-appellant.

Edwin S. Booth, Norman Lettvin, Bair, Freeman & Molinare, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Chief Judge, and DUFFY, SCHNACKENBERG, KNOCH, CASTLE, KILEY and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This is a suit for alleged infringement of United States Reissue Patent No. 24,-535, entitled "Shelving Unit." The reissue patent in suit was issued September 16, 1958 on an application filed January 22, 1958. The application for reissue was based upon the original Franks Patent No. 2,815,130 which was issued December 3, 1957 on an application filed on February 6, 1956.

Defendant is charged with infringing Claims 3 and 4 of the reissue patent. Claims 3 and 4 of the original Franks Patent defined a rack or shelving support unit for holding storage pallets, formed of two pairs of vertical posts and a pair of spaced parallel shelf rails extending horizontally between each pair of vertical posts. Each of the shelf rails had a flat top surface on which the end of the pallet rested. The top inside corner or edge portion of such rail was stepped down to form: " * * * a flat horizontal offset surface inwardly from said upper surface and spaced below the upper surface intermediate the depth of the rail and joined to the upper surface by a substantially vertical shoulder, each offset surface having a horizontal width greater than *one-half* [1] the height of said shoulder. * * * " The step or offset was intended to catch the end of a pallet if it should slip inwardly and drop from the flat top of the rail.

In the reissue application, Claims 3 and 4 of the original patent were changed to read: " * * * each offset surface having a horizontal width greater than *one-third* [one-half] the height of said shoulder." The specification of the reissue patent was likewise changed from one-half to one-third to provide a disclosure to support the reissue claims.

Defendant made a motion for summary judgment predicated on the contention that the controlling rule of law in the case at bar was defined and stated in Crane Packing Company v. Spitfire Tool & Machine Co., 7 Cir., 276 F.2d 271. The District Court denied the motion for summary judgment saying: " * * * I have come to the conclusion it is not an extension of the patent sufficient to render a summary judgment on it. * * * I think it is an extension. It was embraced in the original patent. It does not come within that one year provision. * * * "

Plaintiff and defendant each cite the Spitfire case. They do not agree on the interpretation of the language used by this Court in that opinion. Other members of the patent bar in briefs filed in this Court in other cases as well as on other occasions, have differed on the interpretation to be placed on the language used by us in the Spitfire opinion. Due to these conflicting interpretations of Spitfire, this Court concluded that the argument of this case would be a suitable occasion for this Court, sitting *en banc,* to consider the conflicting opinions mentioned.

In Crane Packing Company v. Spitfire Tool & Machine Co., 7 Cir., 276 F.2d 271, we were considering the contention that Claims 1 to 4, inclusive, and Claims 9 to 14, inclusive, of Bullard Reissue Patent No. 23,937 had been infringed. This reissue patent was issued on February 8, 1955 on an application filed June 25, 1953. The original patent No. 2,565,590 had been issued August 28, 1951 on an application filed March 28, 1948.

In Spitfire, the District Court held Claims 1 to 4, inclusive, and Claims 9 and 10 to be invalid as being obvious to one skilled in the art. This Court approved. We stated, 276 F.2d at page 273: "There are no 'unusual or surprising consequences from the unification of the elements here concerned' nor did Bullard's use of the features claimed 'add to the sum of useful knowledge.' " We cited the A & P case, [Great Atlantic & Pacific Tea Co. Supermarket Equipment Corp.] 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. We then added: "The feature claimed lacks the impalpable something which distinguishes invention from simple mechanical skill."

---

1. Emphasis supplied.

Our holding as to the invalidity of Claims 1 to 4, inclusive, and Claims 9 and 10, would seem to be perfectly clear. As far as we know, there has been no dispute as to the meaning of the language in our opinion in Spitfire as to those claims.

We held Claims 11 to 14, inclusive in Spitfire were invalid because the device incorporating those claims was on sale and in use more than one year prior to the filing of the reissue application. It was our discussion of the reasons for this holding that has stirred up the controversy hereinbefore mentioned.

One distinguished patent counsel in another case before this Court characerized our holding as to Claims 11 to 14, inclusive in Spitfire as follows: "In substance this holding means that the prior art, against which any reissue patent is to be measured, is not simply the prior art as of the date of the filing of the original application but also all art which became available in the interval between the filing of the original application and a period of one year prior to the filing of the reissue application. Section 102(b) includes as prior art not only that which is 'in public use or on sale' more than one year prior to application for patent, but also that which 'was patented or desscribed in a printed publication.' Since the issuance of an original patent places it in the prior art, both as a patent and as a printed publication, the above quoted holding would necessarily render invalid any reissue patent, the application for which was filed more than one year after the issuance of the original patent." It is certain that this Court did not intend to announce a rule making such a revolutionary change as to the issuance of reissue patents.

In 1821, James Grant received a patent for an improved method of making hat bodies. In 1825 he presented a petition to Henry Clay, the Secretary of State, saying that the specification of his patent was defective, and asking that the existing patent be cancelled and a new and corrected one be granted. There was no statute to authorize such a proceeding, but Clay did cancel the original patent and issued to Grant new letters patent for the residue of the term covered by the original patent.

Suit was brought on the reissue patent and infringement was found. In the Supreme Court it was urged that the reissue was invalid since the invention had been made public by the issuance of the original patent four years before the application for reissue, and had been in use three years before the application for reissue was filed. The Supreme Court rejected these arguments in Grant v. Raymond (1832), 6 Pet. 218, 31 U.S. 218, 244, 8 L.Ed. 376. In the opinion by Chief Justice Marshall, the Supreme Court stated: "But the new patent, and the proceedings on which it issues, have relation to the original transaction. The time of the privilege still runs from the date of the original patent. The application may be considered as appended to the original application. * * *"

Thereafter, on July 3, 1832, Congress enacted a statute to regulate the reissuance of patents. 4 Stat. 559. This Act provided that no public use after the grant of the original patent should prejudice the patentee in recovering for infringement after the grant of the reissue patent. A more comprehensive patent act was passed in 1836, and included a provision for the reissuance of patents. That provision read (5 Stat. 117, Chap. 357, sec. 13): "* * * And the patent, so reissued, together with the corrected description and specification, shall have the same effect and operation in law, on the trial of all actions hereafter commenced for causes subsequently accruing, as though the same had been originally filed in such corrected form, before the issuing out of the original patent. * * *"

In Spitfire, we discussed the 1952 Patent Codification Act. It is clear that throughout the long period from 1832 to 1952, the Patent Office and the Courts uniformly recognized that the reissue of a patent was an amendment or correction of the original patent, and that such

reissue patent was to be judged on the basis of the prior art that existed at the time of the original application.

The vital question to be now considered is whether the Patent Codification Act of 1952 changed the law as it had existed since 1832. We consider it significant that there has been no statement by the Revisor or any member of Congress or in any report by Congress that even suggests that the Patent Act of 1952 set up a different standard of prior art for reissue patents than that which had existed for so many years.

The Patent Office practice as to reissue patents was not changed after the passage of the 1952 Patent Code. Some 1200 reissue patents have been issued under the 1952 Code. About 500 of these would be invalid if the correct interpretation of the Patent Code is that a reissue patent may not issue if the application therefor was filed more than one year after the date of the issue of the original patent.

Under 35 U.S.C.A. § 102(b), an application for a patent must be denied if " * * * [T]he invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States * * *."

The section of the Patent Code of 1952 which states the conditions upon which a reissue patent may be issued is 35 U.S. C.A. § 251. For the first time there appeared an express statutory recognition of the right to have a broadened reissue. The provision is "No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent." This provision would seem to be entirely inconsistent with an intent to deprive a patentee of his rights as they existed with respect to the prior art at the time of his original application. As to a narrower reissue, if a patentee believed he had claimed too broadly, the paragraph does not indicate an intent that the patentee

could correct the situation only by subjecting his rights to re-examination in the light of all of the intervening art.

It is the third paragraph of section 251 which has caused some difference in opinion as to the intent of Congress. Instead of again reciting the procedural provisions relating to Patent Office practice, it provides: "The provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent, except that application for reissue may be made and sworn to by the assignee of the entire interest if the application does not seek to enlarge the scope of the claims of the original patent."

█ In our view, the references in section 251 to " * * * [P]rovisions of this title relating to applications for patent * * *." are to those sections in Chapter 11 entitled "Application for Patent," rather than a reference to section 102 which is entitled "Conditions for patentability; novelty and loss of right to patent" which appears in Chapter 10 entitled "Patentability of Inventions."

█ There is nothing in the 1952 Patent Code to indicate that Congress intended thereby to change the long-established view as to reissue patents, that the defective patent, although amended and corrected, is still the same patent.

It is difficult to conceive that Congress, in the last paragraph of section 251, would expressly provide that a broadened reissue patent may be applied for within two years of the grant of the original patent and by implication say that a narrowed reissue patent may be applied for over a longer period, if in the preceding paragraph it had referred to section 102(b) with the intent that all applications for reissue more than one year after publication of the original patent would be invalid. Had there been any intent to drastically alter the conditions of patentability with respect to reissue patents, Congress could and would have used appropriate language to say so.

In Ex parte Strassburger, 127 USPQ 417, the Patent Office Board of Appeals, in an opinion written by the Examiner in Chief, refused to follow our opinion in Spitfire assuming that what we there said was, in effect, that a reissue patent could not be validly issued if the application therefor was more than one year later than the date of the issue of the original patent.

Turning now to the reissue patent in the case at bar, defendant-appellant states the contested issues as 1) whether Claims 3 and 4 of Franks Reissue Patent No. 24,535 which are different from and broader than any claims in Franks original patent, are valid because of prior public use and sale more than one year prior to the filing of the application of the reissue patent, and 2) whether Claims 3 and 4 of the reissue patent are "enlargements" within the meaning of the Spitfire case in view of England v. Deere & Company, 7 Cir., 284 F.2d 460.

The question before us for decision is whether the District Court erred in refusing to grant defendant's motion for a summary judgment. We granted the petition for an allowance of an appeal under the Interlocutory Appeals Act of 1958, 28 U.S.C.A. § 1292b.

■ In our opinion, the District Court was correct in not granting defendant's motion for a summary judgment. That Court could not properly say, as a matter of law, that judgment should be awarded to the defendant. There then existed some confusion as to our holding in the Spitfire case and its application, if any, to the instant case. We think the District Court should consider the case at bar on the merits.

The order denying the defendant's motion for summary judgment is

Affirmed.

SWYGERT, Circuit Judge (concurring).

I concur in Judge Duffy's opinion. However, I feel that I must state my understanding of Crane Packing Company v. Spitfire Tool and Machine Company, 7 Cir., 276 F.2d 271, and how it relates to the issue presented by the motion for summary judgment in the present case.

According to my understanding of Spitfire, the reissue claims were directed to an inventive concept different than was encompassed by the original claims thereby making them subject to 35 U.S.C. § 102(b). Consequently, I think that when the District Court hears the case on its merits, a determination is required whether the disputed reissue claims are merely a broadening—a "filling out"—of the original claims within the limits of the alleged invention or are directed to a different invention and therefore come within the ambit of Muncie Gear Works, Inc. v. Outboard, Marine & Mfg. Co., 315 U.S. 759, 62 S.Ct. 100, 86 L.Ed. 479, and Engineering Development Laboratories v. Radio Corporation of America, 2 Cir., 153 F.2d 523.

CASTLE, Circuit Judge (concurring).

I concur in the result reached by Judge Duffy in his opinion. But I would affirm the District Court's denial of summary judgment for the defendant on the basis that the change here made in the claims by the reissue patent, unlike the change considered in Crane Packing Company v. Spitfire Tool & Machine Co., 7 Cir., 276 F.2d 271, did not preempt additional subject matter by a broadening or enlargement of the scope of the claims of the original patent. Here there was but a minor change in dimension of an offset surface—a feature embraced by the original claims. The change was not novel nor did it produce novelty. The offset continued to perform the same function in the same manner.

The reissue claims here involved are not within the scope of the teaching of Spitfire. In that case there was a broadening or enlargement of the original claims to incorporate an "overhanging" wear ring to control lap contour. The novelty of the reissue claims was contended to be the added "overhanging" feature of the wear ring. In Spitfire we stated (p. 274):

"Claims 11 to 14, inclusive, were held invalid under 35 U.S.C.A. § 102 (b) because the device was on sale and in use more than one year prior to the filing of the reissue application. The common thread running through claims 11 to 14, inclusive, and contended by plaintiffs to constitute their novel feature, is the "overhanging" rotating wear ring which controls lap contour by overhanging one edge of the annular lap by an amount which takes into consideration the type of article being lapped, and the desired contour. * * *"

It was conceded that the device incorporating the overhanging ring feature was on sale and in public use more than one year prior to the application for the reissue patent. We agreed with the holding of the learned Chief Judge of the District Court that the reissue claims were therefore invalid, and stated (p. 274):

"We agree with the District Court's conclusion that although a reissue application enlarging claims may be filed within two years from the grant of the original patent it is, nevertheless, subject to the conditions proscribed by § 102(b) which are by reference incorporated in § 251."

In so doing we pointed out that (p. 274):

"The language incorporating provisions of the title relating to applications in the section authorizing and governing reissue patents is an entirely new provision added by the Patent Act of 1952. It was not contained in the previous statute (R.S. § 4916, 35 U.S.C.A.Appendix, § 64). Its scope is not limited to formal or procedural, as distinguished from substantive, matters. * * *"

The holding in Spitfire of course is restricted to the issue the Court had before it—an attempted broadening or enlargement of claims through reissue despite public use and sale of the device incorporating the feature added by the broadened claims more than one year prior to the application for the reissue patent.

Judge Duffy's opinion recognizes that the section of the Patent Code of 1952 (35 U.S.C.A. § 251) which states the conditions upon which a reissue patent may be issued introduced for the first time an express statutory recognition of *broadened* reissues and that this entirely new provision restricted the period for application for such a reissue to within two years from the grant of the original patent. It was as a part of this presumably deliberate congressional action that there was added to this same section the complementary new provision that "[t]he provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent * * *". And one of these provisions (35 U.S.C.A. § 102(b)) requires denial of an application if the invention was on sale or in public use in this country more than one year prior to the date of application.

I perceive it to be abundantly clear that Congress in extending statutory approval to the principle of "broadened" reissues sought at the same time to fix definite limits to circumscribe the privilege of such a reissue. And as to such "broadened" reissues the change Congress so effected is substantive—it concerns the conditions under which broadened reissue patents are to be issued.

I find nothing strained or strange in ascribing to Congress the intent it literally expressed. Why should not broadened reissue claims be tested in a manner similar to original claims? Surely it is not without foundation in the public interest that they be so tested—and the test prescribed does permit a one-year period of grace to the patentee to extend the domain he originally preempted by his claims even in the face of public disclosure, sale or use.

Insofar as reissues other than *broadened* reissues are concerned the restrictions imposed by the two-year period for application and the ban of § 102(b) have no application. The two-year limi-

tation for applications is expressly confined to applications for enlargement of the scope of claims. And all invention defined by the original claims is protected by the original patent and it is only a reissue application for broadened or enlarged scope of claims and consequent preemption of additional subject matter which must fall before the interdict of § 102(b). And Spitfire stands for no more than this.

But in face of the legislative history of the section and the context in which the two entirely new provisions were added Judge Duffy's opinion sees no congressional design to effectuate any substantive change but merely intent to assure that reissue applications be accorded the same procedural formalities in the patent office as are prescribed for applications for original patents. And in support of such emasculated interpretation of the entirely new provisions added to the section Judge Duffy harkens to a contention advanced by "distinguished patent counsel"[1] that the doctrine of Spitfire requires that no reissue patent of any kind be issued on an application made more than one year after issuance of the original patent because the original patent constitutes a publication. I submit that this is a specious argument—a complete non sequitur. Whatever false lustre it may have served to radiate when earlier advanced in an attack made on the rationale of Spitfire, cloaked in the anonymity of a nom de plume, and published in a metropolitan law bulletin, has since been perceptibly dulled by the United States Supreme Court's denial of certiorari in Spitfire (363 U.S. 820, 80 S.Ct. 1259, 4 L.Ed.2d 1517) after first having granted the American Patent Law Association leave to file a brief as *amicus*

*curiae* in which the same argument was made.[2]

I cannot join with Judge Duffy in his criticism and rejection of Spitfire. I adhere to the view that Spitfire correctly appraises and applies § 251 in the light of the entirely new provisions added by Congress in 1952. And I find nothing in Spitfire which is inconsistent with our later decision in England v. Deere & Company, 7 Cir., 284 F.2d 460, p. 464 where Judge Duffy's opinion aptly characterized the objective of the reissue claims to be to reflect corrections made of defects in the original specifications. There the reissue claims were directed to the same inventive combination as the original claims with the relationship of the elements merely being described somewhat differently. In England the District Court refers to the reissue claims there involved (182 F.Supp. 133, 138) as:

> "The narrower claims allowed in the reissue patent * * *."

Neither counsel in the instant case asserts that there is any real conflict between Spitfire and England although they differ as to the application of Spitfire to the facts here involved. I submit that no conflict exists in the legal principles expressed by each of the opinions. But if conflict does exist it affords no basis for rejection of Spitfire rather than England.

SCHNACKENBERG, Circuit Judge (concurring).

The opinions filed since the *en banc* hearing in this case are in agreement on at least one thing, and that is that there have been conflicting interpretations placed by members of the patent bar on our opinions in Spitfire and England

---

1. The reference is to counsel in another case.
2. I am fully aware of the comment of Justice Frankfurter in his memorandum in Elgin Joliet & Eastern Ry. Co. v. Gibson, 355 U.S. 897, 78 S.Ct. 270, 2 L.Ed.2d 193 concerning lack of significance in the denial of certiorari. It is to be assumed, however, that the Supreme Court

examined the *amicus curiae* brief it granted leave to be filed. If it was persuaded that Spitfire is or might be the gross perversion of the principles of patent law it was represented to be by the Association, and results in the dire consequences attributed to it, it does not seem unreasonable to assume that certiorari would have been granted.

So far as the appeal in No. 13268 is concerned, I concur with both the opinion of Judge Duffy and that of Judge Castle that the order denying the defendant's motion for summary judgment should be affirmed. Such a disposition of the matter in this court might well afford an opportunity for the Supreme Court to assume jurisdiction of this case because of the unusual and disturbing circumstances existing at the patent bar and growing out of the differences in interpretation so clearly reflected in the accompanying opinions. Certainly, as a matter of general policy, the Supreme Court cannot be expected to accept cases involving questions of validity or infringement of patents which are of interest only to the litigants. That court may see in this case a pressing need for solution of a question of general interest in the field of patent law.