**In re Jack BAUMAN.**

**Appeal No. 82–520.**

United States Court of Customs and Patent Appeals.

July 22, 1982.

Laurence H. Pretty, Los Angeles, Cal., and J. F. McLellan, Long Beach, Cal., for appellant.

Joseph F. Nakamura, Sol., and John W. Dewhirst, Associate Sol., Washington, D. C., for Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER, and NIES, Judges.

MILLER, Judge.

This is an appeal from the decision of the Patent and Trademark Office ("PTO") Board of Appeals ("board") affirming the examiner's rejection of appellant's claims 1–11 as anticipated under 35 U.S.C. § 102(b). We reverse.

BACKGROUND

The relevant facts are as follows: Appellant's patent No. 3,858,247,[1] disclosing both an apparatus and method but claiming only the apparatus, issued January 7, 1975. Less than one year later, on October 24, 1975, appellant filed a reissue application[2] seeking to add method claims to his patent.

The method claims in the reissue application were rejected on the grounds that: (1) there was no apparent intent to claim the method in the original patent application; and (2) the claims were drawn to a different invention from the issued apparatus claims. The rejections were affirmed by the board,[3] after which the application was abandoned. Before abandoning this reissue

---

**1.** Issued on application serial No. 354,019, filed April 24, 1973, for "Scalp Anchor for Hairpiece."

**2.** Serial No. 625,383, for "Scalp Anchor for Hairpiece and Method of Installing Same."

**3.** The board said: "[W]e do not find any indication in the original patent that such method steps were part of the invention to be secured by that patent." Accordingly, relying on *In re Rowand*, 526 F.2d 558, 187 U.S.P.Q. 487 (Cust. & Pat.App.1975), the board held that appellant could not obtain claims to his method invention in his reissue application.

application, appellant filed a regular patent application[4] on November 22, 1976, claiming the benefit of the filing date *of the reissue application* under section 120 and containing the usual oath of a continuation application (37 CFR 317). Claims 1–7 on appeal correspond to the method claims in the abandoned reissue application, and appealed method claims 8–11 were added by amendment.

The examiner rejected all eleven claims as barred under section 102(b) by appellant's patent, refusing to accord the claims the benefit of the filing date of the reissue application which would have precluded application of section 102(b).

*Board of Appeals*

The board, in its principal opinion, rejected appellant's contention that the appealed claims were entitled to the filing date of the reissue application, which was filed before the patent became a statutory bar. Reliance was placed on *Conover v. Downs*, 17 C.C.P.A. 587, 35 F.2d 59, 3 U.S.P.Q. 58 (1929), where this court held that a conventional "continuation" of a reissue application was not entitled to the filing date of the patent, stating:

> Is appellant entitled to the filing date of his original application, April 30, 1919, for a constructive reduction to practice, as his counsel so vigorously contends? We think not. While it is true that appellant disclosed the process in issue in that application, he did not claim it. That application matured into a patent on December 9, 1919. No claims to this process were made by appellant until he filed his application for a reissue, July 13, 1921. In view of the fact that the claims for the process were for a different invention than that involved in the patent of December 9, 1919, appellant was required by the primary examiner to cancel these claims. This ruling was accepted by appellant, and the claims were canceled. Accordingly, appellant had no proper application for the invention pending in the Patent Office until he filed his independent application on November 28, 1921, nearly two years after his application of April 30, 1919, had matured into a patent. There was, therefore, no parent application pending in the Patent Office to which his application of November 28, 1921, could relate or attach.

*Id.* at 590–91, 35 F.2d at 60, 3 U.S.P.Q. at 59. On request for reconsideration and in response to appellant's argument that *Conover* only dealt with whether the "continuation" of the reissue application was entitled to the patent's filing date, the board said:

> While it is true that in Conover the primary issue was whether a continuation of a reissue could attach to the patent, the Court had to decide whether the continuation case that was not a reissue could attach to the reissue. The Court held that it could not.

The board also relied on *Ex parte Hammond*, 31 U.S.P.Q. 340 (Comm'r Pat. 1936) for its statement that "a so-called continuing application cannot be valid unless it is based upon an application upon which a valid patent could have issued." *Id.* at 341.

The concurring board member agreed with the reasons given in the principal opinion for affirming the examiner's section 102 rejection. In addition, he stated:

> [W]hen a reissue application is filed, certain conditions are imposed by 35 U.S.C. § 251 and agreed to by the applicant. Any application purporting to be a continuation or division of such a reissue application must be subject to these same conditions. In other words, it also must be a reissue application. If it is not, then it follows that it cannot be a continuation or division of a reissue application and is not entitled to the benefits of the filing date of the reissue application under 35 U.S.C. § 120.

In a separate dissenting opinion, the remaining board member said:

> I can find no basis in the law for not providing the present regular application

4. The subject of this appeal. Serial No. 744,151, for "Method of Installing a Scalp Anchor for a Hairpiece."

the benefit of the earlier filed reissue application filing date under the provisions of 35 U.S.C. § 120. For the reasons generally expressed in *Ex parte Solomons*, 201 U.S.P.Q. 42 (PTO Bd. App. 1978), I feel the appellant's position herein should be sustained.

In addition, the third paragraph of 35 U.S.C. § 251 states that:

"The provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent, except . . . [the exception does not apply to the issues of this case]";

and, under this provision, it appears to me that 35 USC 120 . . . is here applicable to the present application, as it would be with other regular applications. Section 120 requires identity of inventorship, copendency, disclosure continuity consistent with 35 U.S.C. § 112, and a specific reference to the earlier filed application. Each and every one of these requirements has been fulfilled by the appellant in the present application. [Footnote omitted.]

## OPINION

The sole issue is whether appellant's application is entitled to the benefit of the filing date of his now abandoned reissue application under 35 U.S.C. § 120.

The basic requirements of section 120 are copendency, continuity of disclosure and in-

ventorship, and reference to the earlier application.[5] It is not questioned that, in accordance with section 120, the application on appeal was "filed before the patenting or abandonment of or termination of proceedings on" the reissue application; the invention sought to be patented was "disclosed in the manner provided by the first paragraph of section 112" in the reissue application; and both applications were filed "by the same inventor." Additionally, it is clear that the appealed application "contains . . . a specific reference to the earlier filed application." Therefore, all *statutory* requirements for receiving the benefit of the filing date of the earlier application have been satisfied by appellant.

Acceptance of the PTO's position would require recognition of a nonstatutory exception to the clear language of section 120. Indeed, the PTO acknowledges that reissue applications continuing from reissue applications are within the scope of section 120. Thus, the PTO's proposed nonstatutory exception to section 120 would be applicable only when the applicant of a regular application seeks the benefit of the filing date of a reissue application.[6]

The legislative history of section 120 is silent on whether a regular application may claim the benefit of the filing date of a reissue application. However, the PTO urges the applicability of decisions prior to the effective date of the 1952 act on the

5. 35 U.S.C. § 120 provides:

**Benefit of earlier filing date in the United States**

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by section 363 of this title, by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

6. We note that section 251 states: "The provisions of this title relating to applications for

patent shall be applicable to applications for reissue of a patent . . . ." In *Union Asbestos & Rubber Co. v. Paltier Corp.*, 298 F.2d 48, 132 U.S.P.Q. 219 (CA 7), *cert. denied*, 369 U.S. 865, 82 S.Ct. 1031, 8 L.Ed.2d 84 (1962), the Seventh Circuit reviewed the legislative history to ascertain the scope of this portion of section 251, but was unable to find an express indication of Congressional intent. The court concluded:

In our view, the references in section 251 to " * * * [P]rovisions of this title relating to applications for patent * * *." are to those sections in Chapter 11 entitled "Application for Patent," rather than a reference to section 102 which is entitled "Conditions for patentability; novelty and loss of right to patent" which appears in Chapter 10 entitled "Patentability of Inventions."

*Id.* at 51, 132 U.S.P.Q. at 221. Section 120 is part of Chapter 11.

basis that section 120 was a codification of existing law.[7] *See In re Hogan*, 559 F.2d 595, 603–04, 194 U.S.P.Q. 527, 535 (Cust. & Pat.App.1977), where this court examined the origin of continuing application practice in *Godfrey v. Eames*, 68 U.S. 317, 17 L.Ed. 684 (1863). In the latter case, which involved only regular, nonreissue applications, the Court held that the two applications (parent and continuing) "are to be considered as parts of the same transaction, and both as constituting one continuous application, within the meaning of the law." *Id.* at 326.

The Solicitor argues that regular and reissue applications are so "fundamentally different ... that the two could never properly be considered parts of *the same transaction, or as constituting one continuous application.*" Analogously, the board, relying on the statement in *Ex parte Hammond, supra*, that "a so-called continuing application cannot be valid unless it is based upon an application upon which a valid patent could have issued," 31 USPQ at 341, held that "A continuing application cannot be based upon an application that is invalid under 35 U.S.C. 251." However, there is no statutory or regulatory basis for such a broad statement. It is not unusual practice to file a continuing application based on an application in which there are no allowable claims. Where a rejection for prima facie obviousness has been made and is neither overcome by the applicant nor reversed on appeal, the rejected claims cannot remain in that application. A continuing application enables an applicant to, *inter alia*, claim inventions disclosed but not previously claimed,[8] to develop objective evidence of unobviousness, or to replace claims rejected for obviousness with narrower claims that can be approved.

Therefore, it does not follow that the statement in *Godfrey v. Eames* that parent and continuing applications are considered "parts of the same transaction, and ... as constituting one continuous application" means that a continuing application must be based on an application upon which a valid patent could have issued. There is no reason that a barrier to the patentability of claims in a parent application that is unrelated to the date of constructive reduction to practice, necessarily, precludes claims in a later application from receiving the benefit of the parent's filing date. To the extent that *Ex parte Hammond, supra*, is inconsistent, we decline to follow it.

*Conover v. Downs, supra*, was an interference in which the appellant sought not the date of his reissue application (which would not have been early enough), but the filing date of his patent. There was a gap of over one year between the patent issue date and the filing date of the reissue application. There was, therefore, no conceivable satisfaction of the copendency requirement, and the court quite properly held that the application continuing from the reissue application was not entitled to the filing date of the patent. The PTO and appellant disagree over whether the court in *Conover* decided that claims in a regular application could be entitled to the filing date of a reissue application. The opinion itself is less than clear. However, resolution of this point was not necessary to the decision, it was not directly addressed in the opinion, and no reasoning supportive of the PTO's position was advanced by the court. Accordingly, where the issue is presented for what is apparently the first time, we do not

---

7. The legislative history, however, makes it clear that mere codification, without modification, was not intended. "Sections 120 and 121 express in the statute certain matters which exist in the law today but which had not before been written into the statute, and in so doing make some minor changes in the concepts involved." S.Rep.No.1979, 82d Cong., 2d. Sess. 6 (1952); H.R.Rep.No.1923, 82d Cong., 2d Sess. 7 (1952). In the event of a point not addressed by the case law or an inconsistency between the case law and the statute, the statute, of course, prevails.

8. *See, e.g., Chapman v. Wintroath*, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491 (1920); *Teter v. Kearby*, 36 C.C.P.A. 706, 169 F.2d 808, 79 U.S. P.Q. 65 (1948); *Harder v. Hayward*, 32 C.C.P.A. 1051, 150 F.2d 256, 66 U.S.P.Q. 51 (1945).

consider this court bound by the interpretation of *Conover* urged by the PTO.[9]

The Solicitor cites *In re Campbell*, 41 C.C.P.A. 896, 212 F.2d 606, 101 U.S.P.Q. 406 (1954), in support of his argument that the "fundamental differences" between regular and reissue applications prevent the application of section 120 in this case. In *Campbell*, the court held that a design application could not be filed as a continuation of a mechanical application. Although it was stipulated that the drawings in the earlier mechanical application showed the same device as that shown by the drawings of the design application, the court said that it did not consider that the filing of the mechanical application was a constructive reduction to practice of the design invention. One judge dissented, reasoning that since the parties stipulated that no new matter was introduced in the design application, the design invention was disclosed and constructively reduced to practice with the filing of the mechanical application. Relying on previous holdings that disclosed but unclaimed inventions may be claimed in continuing applications, he concluded that the applicant should be entitled to the benefit of the earlier filing date as a matter of statutory right.

Whether *Campbell* was correctly decided is unimportant because the reasoning of that case is inapplicable here.[10] In *Campbell*, the court based its decision on the very different disclosure requirements for design and utility patent applications. There is no such "fundamental difference" in the present case. The drawings, specification, and many of the claims are the same. The differences between regular and reissue applications urged by the PTO relate to the legal effect of the patents issuing from the respective applications. Reissue patents are issued "for the unexpired part of the term of the original patent" (35 U.S.C. § 251), are subject to the doctrine of intervening rights (35 U.S.C. § 252), and will issue only upon surrender of the original patent. However, allowing appellant's regular application to obtain the benefit of the reissue application's filing date would not circumvent these requirements. What the PTO fails to recognize is that a patentee can avoid the restrictions applicable to reissue applications by filing a regular application directed to subject matter disclosed but not claimed in his patent within one year of the patent's issue date. *In re Gibbs*, 58 C.C.P.A. 901, 437 F.2d 486, 168 U.S.P.Q. 578 (1971). Thus, if a patentee desires a reissue application with its earlier effective filing date, he must accept reissue restrictions. If he desires a regular application without such restrictions, he must accept a later filing date. In making this statutory choice, a patentee does not circumvent the statute.

Appellant, believing the method invention to be part of the same invention as the claimed apparatus invention, filed a reissue application adding method claims. If the PTO had not contended that the method and apparatus were separate inventions and a reissue patent containing claims to both inventions had issued, it would not be invalid for claiming two distinct inventions.[11] Moreover, if on October 24, 1975, appellant had filed a regular application for the method invention instead of the substantial-

---

9. *See* note 7, *supra.*

10. However, we note *Ex parte Solomons*, 201 U.S.P.Q. 42 (PTO Bd. App. 1978), where the board stated: "[W]e do not consider Campbell as the applicable law on the facts of the present case. We consider that appellants, under the statutes, are entitled as a matter of right to amend their pending utility application by filing a continuing plant application." *Id.* at 43. More recently, in *In re Corba*, 212 U.S.P.Q. 825 (Comm'r Pat. 1981), the Commissioner reviewed the decision of the Group Director denying appellant's design application the benefit of the filing date of a utility application, of which the design application was a purported continuation-in-part. No art rejection on an intervening reference was made. The Commissioner held: "[T]he decision by the Group Director denying continuation status is reversed without prejudice to a later consideration of the issue in a proper forum." *Id.* at 826.

11. 35 U.S.C. § 121 provides in relevant part: "The validity of a patent shall not be questioned for failure of the Commissioner to require the application to be restricted to one invention."

ly identical reissue application, his patent would not have been a statutory bar and his method claims, when patented, would not be limited by the term of the original patent.[12] Appellant, before his patent became a statutory bar, had on file in the PTO an application disclosing and claiming the method invention. It is only because appellant guessed incorrectly which vehicle to use to add the method claims *and* because the PTO rejected the reissue application because it was not for the same invention as the issued patent that appellant is now faced with a section 102(b) rejection on his patent.

In regular application practice, the only sanction, if any, imposed on applicants seeking to claim two inventions in an application is the necessity of filing a continuing application. In the present case, the PTO would deprive the appellant of the right to claim the second invention altogether. Such a result is contrary to the clear language of the statute and is without justification in the case law. The practical effect of the PTO's position would be that applicants, out of an abundance of caution, would file both a regular and a reissue application when there was any question about whether the claims sought were for an invention different from the one claimed in an issued patent.

The Solicitor's argument that appellant cannot avoid gaining the benefit of the filing date of his patent if he is given the benefit of his reissue filing date is without merit. Here, appellant does not seek the benefit of the filing date of the patent. Indeed, *Conover v. Downs* established that a regular application continuing from a reissue application is not entitled to the filing date of the patent. To hold that it is impossible to obtain the *actual* filing date of the reissue application because its *effective* filing date is the patent filing date

would exalt form over substance and serve no useful purpose. Only a reissue application can be entitled to the filing date of a patent in the absence of copendency. The instant application is not a reissue application and, thus, cannot possibly enjoy the earlier date.

As the Supreme Court stated in *United States v. American Bell Telephone Co.*, 167 U.S. 224, 247, 17 S.Ct. 809, 813, 42 L.Ed. 144 (1897), "A party seeking a right under the patent statutes may avail himself of all their provisions, and the courts may not deny him the benefit of a single one. These are questions not of natural but of purely statutory right." The appealed application satisfies all the statutory requirements for continuing application status. Accordingly, we hold that appellant's application is entitled to the benefit of the filing date of his abandoned reissue application under 35 U.S.C. § 120.

The decision of the board is *reversed.* REVERSED.

---

12. The preliminary draft of section 120 stated: "The term of the patent granted on said later application shall not extend beyond the date of expiration of the patent if any, which may be granted on the earlier application." *In re Henriksen*, 55 C.C.P.A. 1384, 1388 n.10, 399 F.2d 253, 257 n.10, 158 U.S.P.Q. 224, 227 n.10

(1968). The deletion of this provision indicates that Congress did not intend limitations such as patent expiration date with that of the patent issued on the parent application to be imposed on the patent issuing on the continuation application.